**UNITED STATES of America**

v.

**James G. WATT, Defendant.**

**Crim. A. No. 95–0040 (RCL).**

United States District Court,
District of Columbia.

Dec. 4, 1995.

Larry Thompson, Michael Sullivan, Robert Schroeder, Office of Independent Counsel, Washington, DC, for U.S.

William Bradford Reynolds, Collier, Shannon, Rill & Scott, Washington, DC, Francis Derron Carter, Carter & Varrone, Washington, DC, Martha P. Rogers, Jackson & Campbell, P.C., Washington, DC, for defendant.

### MEMORANDUM OPINION

LAMBERTH, District Judge.

This matter came before this Court on October 27, 1995 for oral argument on a series of motions filed by the defendant challenging the indictment.[1] Upon careful consideration of the filings and arguments of counsel, and of the relevant statutes and legal authorities, the court shall grant some and deny some of defendant's motions for the reasons set forth below.

## I.

### BACKGROUND

In May 1989, the Subcommittee on Employment and Housing of the Committee on Government Operations of the House of Representatives of the United States Congress ("House Subcommittee") commenced a series of hearings to investigate allegations of abuse, favoritism, and mismanagement in the administration of programs sponsored by the United States Department of Housing and Urban Development ("HUD"). These alleged improprieties were believed to have

---

**1.** Defendant filed the following motions challenging the indictment: Motion to Dismiss Counts 2, 4, 12, 14, 18, 23 and 24; Motion to Dismiss Counts 6, 8, 10, 16, 20, and 22 as improperly charged under 18 U.S.C. § 1503; Motion to Dismiss Count 24; Motion to Dismiss Count 25; Motion to Compel Election Between Multiplicitous Counts; Motion to Dismiss Counts 1 through 23, or in the alternative, for an Election on the Ground That They are Duplicitous; and Motion to Strike Surplusage.

Defendant also filed a motion in limine to prohibit the government from introducing certain evidence under Federal Rule of Evidence 404(b), and a memorandum setting forth defendant's objections to producing certain documents requested by the government pursuant to the trial subpoena issued by this Court on April 5, 1995. The parties agreed to submit these matters to the Court exclusively on the papers. Defendant's motion in limine is addressed in this memorandum opinion. Defendant's discovery objections will be addressed in a separate Order.

There were also two motions previously filed by the defendant to compel the production of documents. The parties agreed in open court that these motions are now moot in light of the government's compliance with defendant's document requests. Accordingly, the court shall deny both of these motions as moot.

occurred during Samuel Pierce's tenure as Secretary of HUD, between the years 1981 and 1989. From approximately 1981 until 1983, James Watt served as Secretary of the United States Department of the Interior in President Ronald Reagan's Cabinet along with HUD Secretary Pierce. According to the government, Watt was allegedly paid over five hundred thousand dollars and promised additional sums after his departure for successfully approaching HUD Secretary Pierce and other high-ranking HUD officials between 1984 and 1986 in order to obtain HUD funding and benefits for private landlords and developers.

On June 9, 1989, Watt testified under oath before the House Subcommittee regarding his involvement with HUD during the administration of HUD Secretary Pierce. Following completion of the House Subcommittee hearings, the Committee on Government Operations of the House of Representatives of the United States Congress ("House Committee on Government Operations"), of which the House Subcommittee was a part, reported that during HUD Secretary Pierce's administration, "[h]ousing programs established to benefit the poor were abused," and that "[i]n many housing programs objective criteria gave way to political preference and cronyism, and favoritism supplanted fairness." House Committee on Government Operations, *Abuse and Mismanagement at HUD*, H.R.Rep. 101–977, 101st Cong., 2d Sess. 3 (1990). The House Committee on Government Operations further reported that HUD's Section 8 Moderate Rehabilitation Program, which was intended to provide for the rehabilitation of low-income housing, had become "riddled with blatant favoritism, political influence, and abuse in the distribution of hundreds of millions of dollars of rent subsidies and tax benefits." *Id.*

In response to these findings, the Judiciary Committee of the House of Representatives of the United States Congress sought the appointment of Independent Counsel to investigate the merits of the HUD allegations. Independent Counsel was appointed in March of 1990, and began his investigation shortly thereafter with the assistance of a federal grand jury sitting in Washington, D.C. On November 21, 1990, Watt testified under oath before the grand jury about his involvement with HUD. The grand jury has now returned a twenty-five count indictment against Watt.

The indictment charges defendant Watt with five counts of perjury for making false statements before the House Subcommittee, in violation of 18 U.S.C. § 1621; six counts of perjury for making false declarations during testimony before a grand jury, in violation of 18 U.S.C. § 1623; five counts of concealment for falsifying, concealing, or covering up a material fact while testifying before the House Subcommittee, in violation § 1001; six counts of concealment for concealing or endeavoring to conceal a material fact while testifying before a grand jury, in violation of § 1503; two counts of making false statements to the Federal Bureau of Investigation ("FBI") and the Office of Independent Counsel ("OIC"), in violation of § 1001; and one count of obstruction of justice for concealing documents requested in a grand jury subpoena *duces tecum*, in violation of § 1503.

## II.

### DISCUSSION

*A. Motions Challenging the Indictment*

1. *Defendant's Motion to Dismiss Counts 2, 4, 12, 14, 18, 23, and 24 in light of the Supreme Court's Ruling in Hubbard v. United States*

■ On May 30, 1995, defendant filed a motion to dismiss counts 2, 4, 12, 14, 18, 23, and 24. Counts 2, 4, 12, 14, and 18 charge defendant under 18 U.S.C. § 1001 with making false statements while testifying before the House Subcommittee.[2] Counts 23 and 24

---

2. 18 U.S.C. § 1001 provides:
Whoever, in any matter within the jurisdiction of any department or agency of the United States, knowingly and wilfully falsifies, conceals or covers up by any trick, scheme, or device, a material fact, or makes and false,

fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined not more than $10,000 or imprisoned not more than five years or both.

charge defendant under § 1001 with making false statements, either personally or through an agent, in response to a federal grand jury subpoena *duces tecum* ("grand jury subpoena"). Defendant argues that these charges should be dismissed in light of the Supreme Court's recent ruling in *Hubbard v. United States*, —— U.S. ——, 115 S.Ct. 1754, 131 L.Ed.2d 779 (1995). *Hubbard* involved a criminal conviction for false statements made in unsworn papers filed in Bankruptcy Court. The issue presented to the Court was whether § 1001 coverage extended to judicial proceedings. The existing doctrine, under *United States v. Bramblett*, 348 U.S. 503, 75 S.Ct. 504, 99 L.Ed. 594 (1955), construed the language of § 1001 broadly so as to apply to any proceeding conducted by the Executive, Legislative, and Judicial branches. *See id.* at 509, 75 S.Ct. at 507. The *Hubbard* Court, however, overruled *Bramblett* and construed both the text of the statute and the legislative history narrowly, rendering § 1001 applicable only to conduct within the Executive branch.[3] *Hubbard*, —— U.S. at ——, 115 S.Ct. at 1764. Defendant maintains that all counts charged under § 1001 should be dismissed in light of the fact that *none* of the allegedly false statements made by the defendant in this case were made to an Executive branch department or agency.

After *Hubbard*, it is clear that the allegedly false statements made by defendant during his testimony before the House Subcommittee are no longer violative of § 1001. The Supreme Court's reasoning leads to the inescapable conclusion that § 1001 extends only to statements made to departments or agencies within the Executive Branch. Defendant's statements to a legislative body are simply beyond the scope of the statutory provision. Because the government concedes that *Hubbard* compels this conclusion, the five counts charging defendant with making false statements in testimony before the House Subcommittee (counts 2, 4, 12, 14, and 18) shall be dismissed.

■ The government, however, maintains that counts 23 and 24 are properly charged under § 1001 and should not be dismissed. *See* Govt.'s Opp. to Mot. to Dis., at 1. Count 23 is based on allegedly false statements made by the defendant in a letter dated June 6, 1990 that accompanied documents submitted to FBI Special Agent Hurlburt of the OIC pursuant to the grand jury subpoena. Although the grand jury subpoena indicated that the defendant was directed to appear before the grand jury with the documents, the OIC permitted the defendant to send the requested materials "in lieu of appearing personally before the grand jury." Letter of May 23, 1990 from Bruce Schwartz to James Watt. Count 24 is based on a letter sent by defendant's attorney to the OIC on January 17, 1995—nearly five years later—that reiterated the allegedly false statements made in the earlier letter.

Defendant argues that counts 23 and 24 should be dismissed under *Hubbard* because the statements upon which these counts are based were made in response to the grand jury subpoena. Defendant maintains that the grand jury is an adjunct of the Judicial Branch, and that in light of the *Hubbard* decision, any allegedly false statements made in response to the grand jury's inquiries cannot be prosecuted under § 1001.

The government, however, contends that defendant's statements in the June 6, 1990 letter could not have been responsive to the grand jury subpoena because the subpoena called for the production of specific *documents*. Although defendant began the letter by stating "This letter is in response to the Subpoena Duces Tecum issued to me," the government contends that the letter does not

*Id.*

**3.** In reversing the lower court's conviction, the *Hubbard* Court observed:

> None of our opinions refer to any indication that Congress even considered whether [§ 1001] might apply outside the Executive Branch, much less that it effectively understood the new enactment to create broad liability for falsehoods in the federal courts. In light of this vacuum, *it would be curious indeed if Congress truly intended [§ 1001] to work dramatic alteration in the law governing misconduct in the court system or legislature.* The unlikelihood of such a scenario only strengthens our conclusion that the *Bramblett* Court erred in its interpretation of § 1001's legislative history. *Id.* —— U.S. at ——, 115 S.Ct. at 1761.

constitute a subpoenaed document, but rather an unsolicited explanation of why so few documents were being produced. Because this letter was mailed to FBI Special Agent Hurlburt, an agent of a department of the Executive Branch, defendant concludes that defendant is properly charged under § 1001. Similarly, the government contends that the second letter sent to the OIC nearly five years later by counsel for the defendant largely repeated the allegedly false statements provided by defendant in the first letter. Like the previous letter, the government maintains that this letter was not responsive to the grand jury subpoena, but was submitted independently and voluntarily to an agent of the Executive branch for the purpose of obstructing justice.

It is axiomatic that the federal grand jury is an appendage of the Judicial branch. *See Brown v. United States,* 359 U.S. 41, 49, 79 S.Ct. 539, 546, 3 L.Ed.2d 609 (1958), *reh. denied,* 359 U.S. 976, 79 S.Ct. 873, 3 L.Ed.2d 843 (1959), *rev'd on other grounds, Harris v. United States,* 382 U.S. 162, 86 S.Ct. 352, 15 L.Ed.2d 240 (1965); *Cobbledick v. United States,* 309 U.S. 323, 60 S.Ct. 540, 84 L.Ed. 783 (1940); *In re Report & Recommendation of June 5, 1972 Grand Jury,* 370 F.Supp. 1219, 1222 (D.D.C.1974). Accordingly, false statements made in testimony before grand jurors or in response to grand jury subpoenas are *not* prohibited by § 1001. Defendant's statements in the June 6, 1990 letter appear to be responsive to the grand jury subpoena. In the letter, defendant explains why so few documents were produced in response to the subpoena. The government correctly points out that the letter was not addressed directly to the grand jury, but was in fact addressed to the OIC. However, *all* the documents produced by defendant, including documents that are indisputably responsive to the grand jury subpoena, were addressed to the OIC. They were all mailed directly to the OIC so that the defendant could exercise the option presented by the OIC of not having to appear personally before the grand jury. If the defendant had chosen to satisfy the grand jury subpoena by presenting the documents directly to the grand jury, and presumably, presenting the June 6, 1990 letter, which included the false

statements before that body, Watt's statements would not have fallen under the jurisdiction of the Department of Justice for purposes of 18 U.S.C. § 1001. Thus, the statements in the June 6, 1990 letter are more reasonably characterized as part of the responses provided by defendant to the grand jury subpoena than as statements made independently to the OIC.

Similarly, the January 17, 1995 letter submitted by counsel for the defendant was intended to reiterate that defendant had complied fully with the grand jury subpoena. This letter, like the letter sent on June 6, 1990, was mailed to the OIC "in lieu of" the grand jury as a matter of administrative convenience. Like the June 6, 1990 letter, the January 17th letter is more reasonably characterized as a response to the grand jury subpoena.

Moreover, even if this Court were to find that the letters were not responsive to the subpoena itself, the Court would nevertheless be obliged to dismiss the counts because the OIC's receipt of the documents "in lieu of" having Watt produce them personally before the Grand Jury constitutes conduct "under the umbrella of the grand jury." *United States v. Deffenbaugh Industries,* 957 F.2d 749, 753 (10th Cir.1992). Although the OIC's functions are "executive in the sense that they are law enforcement functions that typically have been undertaken by officials within the Executive Branch," the OIC's receipt of the subpoenaed documents was a matter of administrative convenience performed *on behalf of the federal grand jury. Morrison v. Olson,* 487 U.S. 654, 691, 108 S.Ct. 2597, 2619, 101 L.Ed.2d 569 (1988). The OIC made no *independent* request for the production of these documents or any explanatory statements related to the production of these documents. The demand for document production came *only* from the grand jury. Mere collection of the subpoenaed materials does not transform what is ordinarily a grand jury function into an Executive Branch activity.

The government maintains that this argument would "immunize the making of false statements to the FBI, and other investigatory agencies any time that a Grand Jury subpoena had been issued...." Govt's Opp. to Mot. to Dismiss, at 15. This is simply not

the case. False statements made to Executive Branch investigative agencies that are *not* in response to a grand jury subpoena request are actionable under § 1001. Similarly, false statements regarding matters independently investigated by Executive Branch department or agencies, even if related to subpoenaed materials, would be actionable under § 1001. However, when an Executive Branch investigative agency inserts itself into the process of document production pursuant to a grand jury subpoena for purposes of administrative convenience, that investigative agency cannot expect its administrative role to redefine what is a purely judicial function.

In sum, defendant's statements in the letters are more reasonably characterized as responses to the grand jury subpoena. In light of the *Hubbard* decision, the making of these statements is not violative of § 1001. This does not mean that defendant is immune from prosecution for making false statements to the grand jury. False statements before a federal grand jury are prosecutable under 18 U.S.C. §§ 287, 1503, 1623. Section 1001, however, is no longer applicable to conduct such as defendant's in this case. Accordingly, counts 23 and 24 shall be dismissed.[4]

### 2. Defendant's Motion to Dismiss Counts 6, 8, 10, 16, 20, and 22 as Improperly Charged under 18 U.S.C. § 1503

The Indictment charges defendant with six counts of concealment for making false statements in testimony before a federal grand jury, in violation of 18 U.S.C. § 1503. Defendant is charged under the "omnibus clause" of 18 U.S.C. § 1503, which provides in relevant part:

> Whoever ... corruptly or by threats or force, or by any threatening letter or communication, influences, obstructs, or impedes, or endeavors to influence, obstruct, or impede, the due administration of justice, shall be punished as provided in subsection (b).

*Id.*

Defendant argues that he was improperly charged with respect to these six counts because his alleged acts do not fall within the statutory scope of the omnibus clause of § 1503. According to defendant, the use of the term "corruptly" in the omnibus clause of § 1503 indicates Congress' intent to limit the applicability of the clause to coercive acts of a "transitive" nature; that is, conduct that is actively intended to corrupt another.[5] Defendant argues that the act of giving false testimony in a grand jury setting constitutes non-coercive conduct, and that as such, falls outside the reach of § 1503.

Defendant believes that more is needed to establish a violation of the omnibus clause of § 1503 than simply giving false testimony before a grand jury. He grounds this contention on an analysis of 18 U.S.C. § 1505, a

4. In light of the court's dismissal of count 23 under *Hubbard*, defendant's Motion to Dismiss to Counts 1 through 23 or for election on the ground that they are duplicitous is moot with respect to count 23. Defendant's July 21, 1995 Motion to Dismiss Count 24 of the Indictment also shall be denied as moot.

Furthermore, Defendant's Motion to Dismiss Count 25 of the Indictment shall be denied on the merits. Defendant conceded that he "would have no legitimate basis" for this motion if the Court found that Special Agent Hurlburt and other OIC officials were "acting as an arm of the grand jury" in receiving defendant's responses to the grand jury subpoena. In light of the Court's finding to this effect, the Court shall deny defendant's motion to dismiss count 25.

5. Defendant's "transitive" reading of § 1503 is based on an interpretation of the statutory term "corruptly" in accordance with the *ejusdem generis* doctrine. Under the *ejusdem generis* doctrine, "a general statutory term [is] understood in light of the specific terms that surround it." *Hughey v. United States*, 495 U.S. 411, 419, 110 S.Ct. 1979, 1984, 109 L.Ed.2d 408 (1990). The general term—in this case, "corruptly"—is construed as an item "belonging to the same class that is defined by the more specific terms in the list." *Holder v. Hall*, —— U.S. ——, ——, 114 S.Ct. 2581, 2604, 129 L.Ed.2d 687 (1994). Since the other offenses listed in the first part of § 1503 cover activity of a transitive nature such as the issuance of threats or the use of force, defendant construes the second part of § 1503—the omnibus clause—as also covering transitive activities exclusively. Thus, defendant seeks to construe the term "corruptly" as applying to actions that "corrupted" another person rather than actions that manifest the actor's own "corrupt" nature.

different obstruction statute, provided by the D.C. Circuit in *United States v. Poindexter*, 951 F.2d 369 (D.C.Cir.1991), *cert. denied*, 506 U.S. 1021, 113 S.Ct. 656, 121 L.Ed.2d 583 (1992). The *Poindexter* court, however, drew a sharp distinction between § 1505 and § 1503, and repeatedly warned that the provisions were too "materially different" for the construction of one to guide the other. *Id.* at 385. In rejecting the § 1505 analogy that defendant now seeks to make, the *Poindexter* court observed:

> [C]ases construing § 1503 [are not] instructive in this regard. A clear interpretation of a similarly worded statute, widely adopted and consistently applied, might shield a facially ambiguous statute from a vagueness attack. That is not the situation here, however.... [T]he language of § 1505 is materially different from that of § 1503, and has been different from the beginning....

*Id.* (citations omitted).

The *Poindexter* court also noted that other courts have rejected "transitive" readings of § 1503 on the ground that such a " 'reading of the statute renders the omnibus clause superfluous.' " *Id.* (quoting *United States v. Howard*, 569 F.2d 1331, 1333 (5th Cir.1978), *cert. denied sub nom., Ritter v. United States*, 439 U.S. 834, 99 S.Ct. 116, 58 L.Ed.2d 130 (1978)). Under defendant's interpretation of § 1503, the omnibus clause would serve no other purpose than to prohibit acts already prohibited in the first part of the statute. This Court cannot endorse a reading of § 1503 that reduces the omnibus clause to mere redundancy. "[T]he most natural construction of the [omnibus] clause is that it prohibits acts that are similar in result, rather than manner, to the conduct described in the first part of the statute." *Howard*, 569 F.2d at 1333. The "result" proscribed in the first part of § 1503 is the obstruction of the due administration of justice. It is clear to this Court that the making of false statements before a grand jury

while under oath constitutes such an obstruction. As the Fifth Circuit explained in *United States v. Griffin*, 589 F.2d 200 (5th Cir. 1979), *cert. denied*, 444 U.S. 825, 100 S.Ct. 48, 62 L.Ed.2d 32 (1979), "[t]he perjurious witness can bring about a miscarriage of justice by imperiling the innocent or delaying the punishment of the guilty." *Id.* at 204. Thus, it is proper to charge a defendant under the omnibus clause of § 1503 for making false statements before a grand jury while under oath if the making of such statements rises to the level of obstruction. *See, e.g., United States v. Bridges*, 717 F.2d 1444 (D.C.Cir. 1983), *cert. denied*, 465 U.S. 1036, 104 S.Ct. 1310, 79 L.Ed.2d 708 (1984).

Defendant, however, insists that the making of false statements cannot be charged properly under the omnibus clause of § 1503. Defendant relies principally on the Supreme Court's decision in *In re Michael*, 326 U.S. 224, 66 S.Ct. 78, 90 L.Ed. 30 (1945), to support this proposition. In *In re Michael*, the Supreme Court reversed the conviction of a defendant who had been found guilty of contempt under the 1831 statue for giving false testimony to a grand jury.[6] The Court held that although "[a]ll perjured relevant testimony is at war with justice, ... [i]t need not necessarily ... obstruct or halt the judicial process." *Id.* at 227, 66 S.Ct. at 80. The Supreme Court further noted that "the function of the a trial is to sift the truth from a mass of contradictory evidence, and to do so the fact finding tribunal must hear both truthful and false witnesses." *Id.* at 227–28, 66 S.Ct. at 80.

Defendant's argument, however, reads too much into the *Michael* opinion. At no point did the Supreme Court indicate, as the defendant suggests, that perjury may never constitute obstruction of justice as contemplated by § 1503. To the contrary, the *Michael* Court explained that false statements made under oath indeed could amount to "contemptuous conduct" so long as the gov-

---

6. Section 2 of the Act of March 2, 1831, 4 Stat. 487, is the forerunner of 18 U.S.C. § 1503. It provides:

> [I]f any person ... shall corruptly, or by threats or force, endeavor to influence, intimidate, or impede any juror, witness, or officer

> ... or shall, corruptly or by threats or force, obstruct or impede, or endeavor to obstruct or impede the due administration of justice[, that person] shall be liable to prosecution....

*Id.*

ernment pleads and proves "the further element of obstruction to the Court in the performance of its duty." *Id.* at 228, 66 S.Ct. at 80 (quoting *Ex parte Hudgings,* 249 U.S. 378, 382, 383, 39 S.Ct. 337, 339, 340, 63 L.Ed. 656 (1919)). Moreover, no additional act need be alleged to state an offense under the omnibus clause of § 1503. *See United States v. Caron,* 551 F.Supp. 662, 669 (E.D.Va.1982), *aff'd,* 722 F.2d 739 (4th Cir.1983), *cert. denied,* 465 U.S. 1103, 104 S.Ct. 1602, 80 L.Ed.2d 132 (1984). Other courts addressing the issue whether perjury may also constitute an obstruction of justice under § 1503 have read *Michael* in a similar fashion. *See, e.g., Griffin,* 589 F.2d at 205 (citing *Michael* and *Ex parte Hudgings* to support the proposition that false statement may also constitute an actionable obstruction of justice); *United States v. Perkins,* 748 F.2d 1519, 1527 (11th Cir.1984) (affirming a § 1503 conviction based on false and evasive testimony and finding no conflict with *Michael* and *Hudgings* ); *Caron,* 551 F.Supp. at 669–70 (concluding that *Michael* and *Hudgings* can be reconciled with non-transitive readings of § 1503 so long as "the government [pleads] and prove[s] the additional element of an impediment to the administration of justice.").

In sum, the case law in this Circuit reflects a non-transitive reading of the omnibus clause of § 1503. In light of this non-transitive reading, the government may charge a defendant under the omnibus clause for making false statements before a grand jury while under oath if the making of such statements obstructs the due administration of justice. The principal target of the omnibus clause is the obstruction of justice, regardless of the means employed by the defendant to do so. *See Howard,* 569 F.2d at 1334 ("[The]

---

7. Defendant also argued that the omnibus clause of § 1503 is unconstitutionally vague if it is not given his "transitive" construction. Defendant, however, cites no case holding § 1503 unconstitutionally vague, either facially or as applied to false testimony before a grand jury. Defendant's only support for this argument is a footnote in the Ninth Circuit's opinion in *United States v. Aguilar,* 21 F.3d 1475 (9th Cir.1994), *rev'd in part,* — U.S. ——, 115 S.Ct. 2357, 132 L.Ed.2d 520 (1995). The *Aguilar* opinion raised, but did not decide, whether § 1503 presented a constitutional vagueness problem. *See id.* at 1486 n. 8.

omnibus clause aims at obstruction of justice itself...."); *United States v. Walasek,* 527 F.2d 676, 679 & n. 11 (3rd Cir.1975). Perjury before a grand jury may constitute an obstruction of justice under the omnibus clause of § 1503 because false testimony could cause undue delay, import unnecessary confusion into the grand jury process, and potentially lead to an erroneous indictment. Of course, the government must plead and prove the additional element of obstruction of the grand jury in the performance of its duties. However no additional act need be alleged in the indictment. Accordingly, the Court finds that defendant was properly charged under § 1503 for concealment before a grand jury, and shall deny defendant's motion to dismiss the § 1503 charges (Counts 6, 8, 10, 16, 20 and 22).[7]

### 3. Defendant's Motion to Compel Election Between Multiplicitous Counts

Defendant also contends that the indictment contains multiplicitous counts. The indictment charges defendant with six counts (counts 5, 7, 9, 15, 19, and 21) of perjury in violation of 18 U.S.C. § 1623 for allegedly making false statements before a grand jury. The indictment also charges defendant with six counts (counts 6, 8, 10, 16, 20, and 22) of unlawful concealment for making the same allegedly false statements in testimony before the same grand jury. Defendant claims that the indictment is multiplicitous because the § 1623 and § 1503 charges incorporate the same testimony in such a way that the facts that defendant allegedly falsified are precisely the facts that he allegedly concealed. Defendant argues that by charging under both statutes, the OIC is attempting to punish him twice for the same utterance.

Other courts, however, have addressed the vagueness issue squarely and held that § 1503 provides fair notice that any obstruction to the administration of justice that results from the offering of false testimony before a grand jury falls within the scope of the provision. *See, e.g., Griffin,* 589 F.2d at 206. Moreover, this Circuit's decision in *Bridges* expressly construed § 1503 to punish false testimony before a grand jury. Defendant therefore has no basis for an argument that he lacked fair notice. Accordingly, the Court shall reject defendant's vagueness challenge.

548

Defendant therefore moves for an order compelling the OIC to elect whether to charge under § 1623 or § 1503.

■ The law protects defendants against multiplicitous charges to avoid the imposition of multiple sentences for a single offense and to preclude any prejudice that multiple charges might generate in the eyes of a jury. *See United States v. Clarridge,* 811 F.Supp. 697, 702 (D.D.C.1992); 1 Charles A. Wright, *Federal Practice and Procedure: Criminal* § 142, at 475–76 (2d ed. 1982). An indictment charging multiple offenses arising from the same conduct " 'may falsely suggest to a jury that a defendant has committed not one but several crimes.' " *United States v. Clarridge,* 811 F.Supp. at 702 (quoting *United States v. Duncan,* 850 F.2d 1104, 1108 n. 4 (6th Cir.1988); *see also United States v. Marquardt,* 786 F.2d 771, 778 (7th Cir.1986) (noting that multiple indictments create the impression of more criminal activity than in fact occurred).

This Circuit addressed the issue whether charges under both § 1503 and § 1623 based on the same conduct were impermissibly multiplicitous in *United States v. Bridges.* In *Bridges,* the defendants were convicted and sentenced to consecutive terms for both false declarations and obstruction of justice pursuant to §§ 1623 and 1503, for statements made at a single grand jury appearance. *See Bridges,* 717 F.2d at 1444–45. One of the defendants argued that, based on the facts of the case, the crimes of perjury and obstruction merged into the same offense. The court, however, rejected defendant's argument based on an analysis under *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932) and *Albernaz v. United States,* 450 U.S. 333, 101 S.Ct. 1137, 67 L.Ed.2d 275 (1981), and affirmed the defendant's conviction. *Id.* at 1451. In *Blockburger,* the Supreme Court adopted the following rule of statutory construction:

"[W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of an actual fact which the other does not."

*Id.* at 304, 52 S.Ct. at 182. The *Bridges* court reasoned that, under the *Blockburger* rule of statutory construction, the crimes of perjury and obstruction constitute distinct offenses. However, the court reasoned further that, for purposes of determining whether an indictment is multiplicitous, the court should, in light of the Court's decision in *Albernaz,* examine whether Congress intended to authorize multiple punishments based on the same set of facts. *See Bridges,* 717 F.2d at 1450 (citing *Albernaz,* 450 U.S. at 344–45 & n. 3, 101 S.Ct. at 1145 n. 3). Applying the *Blockburger* test in light of *Albernaz,* the court found that the crimes of perjury and obstruction constituted two separate offenses, and that "[t]he intent of Congress thus must have been to punish twice those who found a way to violate both statutes with a single course of action." *Id.* at 1451.

The Second Circuit reached the identical result in *United States v. Langella,* 776 F.2d 1078 (2d Cir.1985), *cert. denied,* 475 U.S. 1019, 106 S.Ct. 1207, 89 L.Ed.2d 320 (1986). In applying the *Blockburger* test to § 1623 and 1503, the *Langella* court reasoned:

The definitions of perjury and of obstruction of justice each require proof of elements that the other does not. To show perjury, the government must demonstrate falsity and materiality of a witness' statements. 18 U.S.C. § 1623. Neither element is needed to prove obstruction of justice under 18 U.S.C. § 1503. Under that section, the government need only establish that a witness has deliberately attempted to frustrate a grand jury's investigation ... not that the statements were false or material. Conversely, to convict under § 1623, the government need not prove that defendant has obstructed the administration of justice. As each offense requires proof of an element that the other does not, imposition of consecutive sentences for perjury and for obstruction of justice does not run afoul of the principles stated in *Blockburger.*

*Id.* at 1082. The court went on to note that defendant's argument that he should not be punished twice under separate statutes for the same conduct "would fail even if both convictions were founded on identical con-

duct." *Id.* The Second Circuit's reasoning in *Langella* was further substantiated in *United States v. Victor Teicher & Co., L.P.,* 726 F.Supp. 1424 (S.D.N.Y.1989). In *Teicher,* defendants were charged with perjury and obstruction of justice based on the same false statements made in testimony before a grand jury. Defendants argued that the charges contained in the indictment were multiplicitous because they were based on the same set of facts—namely, the same false statements. In rejecting defendants' argument under a *Blockburger* analysis, the court noted:

> In order for the government to prove perjury it must establish that the defendant was under oath, a fact not necessarily required by the obstruction charge. The obstruction charge requires that the government prove that the defendant influenced, obstructed or impeded, or endeavored to influence, obstruct, or impede due administration of justice, a fact not required by the perjury charge.

*Id.* at 1428.

▉ The decisions in *Bridges, Langella,* and *Teicher* clearly resolve this issue adverse to the defendant. Defendant, however, argues that the trial court's resolution of this issue in *United States v. Clarridge* controls. In *Clarridge,* the court proposed a different multiplicity test which required that "each count ... set forth a separate lie or false statement." *Id.* at 703. The *Clarridge* court's proposed multiplicity test was premised on a belief that the various Circuit Courts of Appeals had taken a variety of approaches to this question and that the existing precedent did not establish a "precise and exhaustive formula for determining whether perjury and false statement allegations are multiplicitous." *Id.* This court reads the precedent differently. The multiplicity doctrine in this Circuit is clearly established in *Bridges*. *Bridges* set forth a two-part test which requires reviewing courts to conduct: (1) the Supreme Court's "same

elements" test as set forth in *Blockburger;* and (2) an inquiry into whether the legislature intended multiple punishments for the conduct contained in the indictment as set forth in *Albernaz.* Under the *Blockburger/Albernaz* test as set forth in *Bridges,* defendant's multiplicity argument must be rejected because the perjury and obstruction charges constitute separate crimes for which Congress has provided separate penalties. Accordingly, the court shall deny defendant's motion to compel an election between § 1623 and § 1503 counts in the indictment.

*4. Defendant's Motion to Dismiss Counts 1 through 23, or in the alternative, For an Election on the Ground That They are Duplicitous*

Defendant argues that counts 1 through 23 are duplicitous because *each* count alleges more than one violation of § 1001 (false statements), § 1503 (concealment before a grand jury), § 1621 (perjury before Congress) and § 1623 (perjury before a grand jury).[8] Defendant contends that each allegedly false or obstructive statement should be charged in a separate count. Because counts 1 through 23 each allege two or more false statements per count, defendant argues that all of the counts should be dismissed or, alternatively, the government should allege only one violation based on a single false or obstructive statement per count.[9]

▉ " 'Duplicity is the joining in a single count of two or more distinct and separate offenses.' " *See United States v. Shorter,* 809 F.2d 54, 56 (D.C.Cir.1987), *cert. denied,* 484 U.S. 817, 108 S.Ct. 71, 98 L.Ed.2d 35 (1987) (citing 1 C. Wright, *Federal Practice and Procedure: Criminal* § 142 (2d ed. 1982); *see also United States v. Mangieri,* 694 F.2d 1270, 1281 (D.C.Cir.1982). A district court must undertake a three-step analysis to determine whether a particular count in an indictment is impermissibly duplicitous. First, the court must determine whether

---

8. For example, count one charges defendant with making three separate false statements before the House Subcommittee in violation of § 1621.

9. Defendant's motion to dismiss counts 1 through 23, or in the alternative, for an election on the ground that they are duplicitous is moot with respect to counts 2, 4, 12, 14, 18, 23, and 24 in light of this Court's dismissal of these counts as improperly charged under 18 U.S.C. § 1001.

more than one violation of a criminal statute is alleged under a single count. If the count in question alleges only a single violation, then the court's analysis ends here. If, however, more than one violation is alleged in single count, the court must then determine whether defendant's conduct, which resulted in the multiple violations, "may legitimately be regarded as a single course of conduct and hence a single offense." *Shorter,* 809 F.2d at 56; *Poindexter,* 725 F.Supp. at 24. This determination turns on (1) the language and legislative history of the statute under which defendant is being charged; and (2) the nature of the proscribed conduct. *See id.; see also United States v. Morse,* 785 F.2d 771 (9th Cir.1986), *cert. denied,* 476 U.S. 1186, 106 S.Ct. 2925, 91 L.Ed.2d 553 (1986). If defendant's conduct can be reasonably construed as a single offense, the count will be considered impermissibly duplicitous only if a trial on a single-count basis would be unduly prejudicial to the defendant. *See id.*

As an initial matter, the indictment plainly indicates that more than one violation is being alleged under each count. Defendant correctly points out that each count of the indictment alleges between two and nine separate false statements provided by the defendant during the course of his testimony before Congress and the grand jury. However, there is no mechanical rule that requires each of these statements to be charged as separate offenses under separate counts. If defendant's conduct can be reasonably construed as part of a single, continuous course of conduct, such conduct may be charged in a single count. *See Shorter, supra; Poindexter, supra.* Defendant argues that a review of the language and legislative history of the statutes under which defendant is charged and the nature of defendant's conduct supports his claim that the counts in the indictment are impermissibly duplicitous. The court, however, disagrees with defendant's reading of the statutes and legislative history.

■ The language of the statutes at issue here—§§ 1001, 1621, 1623, and 1503—provides no conclusive evidence that Congress intended perjurious, false, or obstructive statements to be parsed out and charged in separate counts. Section 1001 authorizes the prosecution of any person who "willfully falsifies, conceals, or covers up ... a material fact, or makes any false ... statements or representations, or makes or uses any false writing or document knowing the same to contain any false ... statement or entry...." 18 U.S.C. § 1001. Defendant argues that Congress must have intended for the "proper unit of prosecution [to] be a single perjurious or false statement" because § 1001 makes reference to a "'material fact.'" Def.Mot. at 7. Defendant, however, misconstrues the statutory provision. The reference to a "material fact" establishes a materiality requirement in § 1001—that is, the statutory requirement that the falsification or concealment must be of a "material fact." The establishment of a materiality requirement does not provide any evidence whatsoever as to whether the act or acts which lead to the falsification or concealment must be charged individually or grouped under a single count.

■ Section 1621 provides in relevant part:

> Whoever ... having taken an oath before a competent tribunal ... that he will testify ... truly, .. willfully and contrary to such oath states or subscribes to any material matter which he does not believe to be true ... is guilty of perjury....

18 U.S.C. § 1621. Defendant draws particular attention to the language "any material matter" to reach the conclusion that Congress intended such violations to be prosecuted individually and proscribed any grouping of multiple violations under a single count. Again, defendant misinterprets the materiality requirement of the statute. While this language indicates a clear legislative intent to prosecute only material falsifications or misrepresentations, it sheds little if any light on the question whether defendant's allegedly perjurious acts must be charged individually or grouped under a single count.

■ Section § 1623 provides in relevant part:

> Whoever under oath ... in any proceeding before or ancillary to any court or grand jury of the United States knowingly makes

any false material declaration ... shall be fined under this title or imprisoned not more than five years, or both.

18 U.S.C. § 1623. Defendant argues that the language "false material declaration" provides evidence of Congress's intent to prosecute false statements on an individual basis. Although the applicable language is phrased in the singular, it is well settled that such language should be construed so as to permit more than one false declaration to be prosecuted under a single count. *See United States v. Isaacs,* 493 F.2d 1124, 1155 (7th Cir.), *cert. denied,* 417 U.S. 976, 94 S.Ct. 3183, 41 L.Ed.2d 1146 *reh. denied,* 418 U.S. 955, 94 S.Ct. 3234, 41 L.Ed.2d 1178 (1974).

■ Section 1503 provides in relevant part:

Whoever ... corruptly or by threats or force, or by any threatening letter or communication, influences, obstructs, or impedes, or endeavors to influence, obstruct, or impede, the due administration of justice, shall be punished as provided in subsection (b).

18 U.S.C. § 1503. Defendant argues that the language "letter or communication" indicates Congress' intent to have each perjurious or false statement that rises to the level of obstruction prosecuted on an individualized basis. Defendant's assertion, however, leads to the opposite conclusion. A single letter or communication may contain multiple false or perjurious statements, all of which are intended subvert one particular line of inquiry. However, if courts were to read the language "letter or communication" strictly, as defendant suggests, the court would be compelled to conclude that only one offense has occurred—namely the production of the letter or the communication. In contrast, one can image a single letter or communication that is intended to obstruct multiple lines of inquiry on a whole panoply of topics. In such a case, a strict reading of the language "letter or communication" would result in the erroneous grouping of multiple indictable offenses under a single count. The court therefore declines to adopt defendant's strained reading of § 1503.

■ The legislative history of these statutory provisions is equally unhelpful in determining whether a series of alleged violations may be considered part of a continuous course of conduct and therefore chargeable under a single count. The most that can be gleaned from the legislative history is Congress' overriding purpose of preventing the perversion of the functions of tribunals or departments and agencies of the United States, and facilitating the prosecution of persons whose actions undermine the integrity of the legal system. *See Hubbard v. United States,* — U.S. at — – —, 115 S.Ct. at 1760–61 (1995) (noting that § 1001 was intended to create criminal liability for false statements made to government departments and agencies); *Dunn v. United States,* 442 U.S. 100, 108, 99 S.Ct. 2190, 2195, 60 L.Ed.2d 743 (1979) (citing S.Rep. No. 91–617, at 59 (1969) for the proposition that Congress passed § 1623 to relax the strict common law requirements for establishing falsity and to "afford greater assurance that testimony obtained in grand jury and court proceedings will aid the cause of truth"); *United States v. O'Donnell,* 510 F.2d 1190, 1194 (6th Cir.), *cert. denied,* 421 U.S. 1001, 95 S.Ct. 2400, 44 L.Ed.2d 668 (1975) (noting that "the evident purpose of [§ 1503] is to protect the administration of justice by the courts or other judicial agencies"); *United States v. Williams,* 341 U.S. 58, 68, 71 S.Ct. 595, 600, 95 L.Ed. 747 (1951) (noting that § 1621 was intended to prevent the harm introduced into the "administration of justice by false testimony").

Contrary to defendant's assertions, a review of the nature of defendant's conduct provides compelling evidence that defendant's actions were indeed part of a single, continuous course of conduct that can be properly grouped and charged on a single-count basis. For example, defendant alleges that counts nineteen (perjury before a grand jury, § 1623) and twenty (concealment before a grand jury, § 1503) are impermissibly duplicitous because the government has combined nine separate perjurious and false statements under each count. All nine statements, however, were made on the same day during the same grand jury investigation proceeding. Moreover, all nine statements dealt with the same subject matter—the Kingsley Park, Maryland Project. Presum-

ably, defendant shared the same motivation for making each of these nine statements: to mislead the grand jury about his role in the project and to obstruct the grand jury's investigation into the matter. The nature of defendant's actions therefore suggests that this series of allegedly perjurious and obstructive statements made in relation to one particular project should be construed a single course of conduct rather than a loose collection of unrelated statements.

The same reasoning applies to the other counts that defendant claims are duplicitous. Each of these counts sets out at least two false or obstructive statements made by the defendant. Furthermore, each count groups these allegedly false or obstructive statements according to the subject matter discussed and/or defendant's allegedly overriding purpose in making them.[10] Accordingly, the court finds that in light of the language and legislative history of the statutes in question, and the nature of defendant's conduct, the counts alleged in the indictment, although based on multiple statements, are not impermissibly duplicitous.

Moreover, it is clear that defendant is not prejudiced by the manner of the charging. Given the sheer volume of testimony and the number of allegedly false and obstructive statements made by the defendant, it was reasonable and fair for the Independent Counsel and the grand jury to group multiple violations and charge on a single-count basis. The indictment in this case is strikingly similar to the indictment issued in *United States v. North,* 708 F.Supp. 372 (D.D.C.1988). In *North,* the Independent Counsel grouped a number of allegedly obstructive acts under three counts. North argued his alleged obstructive acts were improperly grouped into three counts, thereby making the counts im-

permissibly duplicitous. In rejecting North's duplicity challenge, Judge Gesell commended the Independent Counsel for framing the indictment in this fashion:

> In a responsible, understandable fashion, the [Independent Counsel] avoided charging a multitude of additional counts, each of which could carry an additional penalty if conviction occurred. He did not unnecessarily duplicate the charges, but he properly recognized that there were three critical times, involving somewhat separate questions, when North sought to block Congress' proper inquiries.

*Id.* at 375. The court expressed a similar sentiment in *United States v. Mangieri,* 694 F.2d 1270 (D.C.Cir.1982) with respect to written false statements. In *Mangieri,* defendant was charged with nine counts of making false statements on applications for loans from a federal credit union in violation of 18 U.S.C. § 1014. Defendant argued that each of the nine counts was duplicitous because each was based on more than one false statement. In rejecting defendant's duplicity challenge, the court reasoned:

> Appellant's articulation of the duplicity rule would require the government to file a separate count for each misrepresentation on each application, thereby producing a danger of inappropriate multiple punishments for a single criminal episode. While we do not foreclose the possibility that under some circumstances, multiple misrepresentations might justify separate offenses, in this case we find the indictment not duplicitous.

*Id.* at 1282 (footnote omitted).

Furthermore, by carefully limiting the number of counts in the indictment, the Independent Counsel effectively decreased the risk that a jury would be diverted from a

---

**10.** For example, count one alleges that the defendant perjured himself before the House Subcommittee in violation of § 1621 based on statements made concerning the administration of United States Department of Housing and Urban Renewal ("HUD") programs and defendant's involvement in such programs. Although the government cites three allegedly false statements made by defendant, all three statements are properly charged in the indictment under a single count in light of that fact that all three statements were provided during one hearing for

the purpose of misleading the committee as to his role in the administration of HUD programs. Similarly, in count three, defendant is charged in a single count with perjuring himself before Congress regarding the manner and amount in which defendant was compensated for his HUD activities. Although two separate statements were made, the government properly grouped these two statements under a single count because the two statements were made as part of a common scheme to mislead Congress on the issue of payments.

careful analysis of the conduct at issue. The only potential danger that might result from prosecuting the defendant on a single-count basis is the possibility that the jury may render a guilty verdict on a particular count without unanimity regarding the events in question. This possibility, however, can be more than adequately controlled by providing proper limiting instructions to the jury. *See Poindexter,* 725 F.Supp. at 24. Accordingly, defendant's motion to dismiss on duplicity grounds shall be denied on the merits as to counts 1, 3, 5, 6, 7, 8, 9, 10, 11, 13, 15, 16, 19, 20, 21, and 22, and denied as moot as to counts 2, 4, 12, 14, 18, and 23.

### 5. *Motion to Strike Surplusage in the Indictment*

Defendant claims that the indictment contains inappropriate surplusage and moves this Court to order the offending language stricken from the indictment. The indictment begins with a 16 page "Introduction to All Counts" section ("Introduction section") that provides a brief discussion of the background of the case and the context of the charges. This section opens with a discussion of the defendant's service as Secretary of the Interior and of his business relationships with Phoenix Associates and Joseph Strauss. The section continues with a brief description of the HUD programs relevant to the charges, followed by a review of defendant's contacts with HUD Secretary Pierce and other HUD officials. The section concludes with a synopsis of the House Subcommittee investigation that led to the appointment of Independent Counsel and, ultimately, to the indictment of the defendant.

Following this Introduction section is the Charges section, which sets forth the twenty-five counts contained in the indictment. The Charges section is divided into four categories based on the subject matter of defendant's testimony or actions. The counts are arranged under the following headings: (1) "Testimony Relating to Watt's Overall Involvement in HUD;" (2) "Testimony Relating to the Sancture, Puerto Rico Projects;" (3) "Testimony Regarding the Kingsley Park, Maryland Project;" and (4) "Obstruction."

Defendant filed a motion pursuant to Rule 7(d) to strike various portions of the indictment as "unwarranted and inappropriate surplusage." Def.'s Mot. to Strike, at 1. Defendant first moves to strike the entire Introduction section from the indictment. Defendant argues that, in addition to providing general background information, the Introduction section presents the prosecution's theory of the case. According to the defendant, "[f]undamental fairness" demands that the Introduction section be stricken because the indictment will likely be read to the jury and defendant will not have a similar opportunity to present his theory of the case before the jury in narrative form. Defendant also requests that the phrases "among other things," "a variety of HUD programs, including," and "among the other" be stricken wherever they appear in the indictment. Defendant contends that these words suggest that defendant was charged with offenses in addition to those listed in the indictment, and that such words are prejudicial wherever they appear in the indictment. Defendant also urges this court to strike all brackets and the words contained in them as they appear within quotations of witness testimony in the Introduction section and in counts one, five, seven, nine, fifteen, nineteen, and twenty-one. Defendant maintains that the testimony should in effect "speak for itself," and that the use of bracketed information permits the prosecution to editorialize and put an unfair and unwarranted "spin" on witness testimony. Finally, defendant moves to strike the four organizational headings in the Charges section. Defendant contends that the headings bear no relationship to the questions and responses of the defendant presented under them, and that the headings serve only to provide an organizational framework that is convenient to the OIC, but prejudicial and misleading to the defendant.

 A district court may strike language from an indictment if that language contains "prejudicial allegations that are neither relevant nor material to the charges made in an indictment." *United States v. Poore,* 594 F.2d 39, 41 (4th Cir.1979); *see also United States v. Terrigno,* 838 F.2d 371, 373 (9th Cir.1988) (holding that "prejudicial or inflammatory allegations that are neither

relevant nor material to the charges" should be stricken). A motion to strike surplusage from an indictment is addressed to the sound discretion of the court. *See Dranow v. United States,* 307 F.2d 545, 558 (8th Cir.1962); Charles A. Wright, *Federal Practice and Procedures: Criminal* § 127, at 426 (2d ed. 1982). Accordingly, the striking of surplusage from an indictment, although *permissible,* is by no means mandatory.

■ Motions to strike surplusage from an indictment are highly disfavored in this Circuit. As the D.C. Circuit noted in *United States v. Jordan,* 626 F.2d 928 (D.C.Cir. 1980), "[t]he standard under Rule 7(d) has been strictly construed against striking surplusage." *Id.* at 930 n. 1; *see also United States v. Poindexter,* 725 F.Supp. 13, 35 (D.D.C.1989). The District of Columbia is not alone in this regard. *See, e.g., United States v. Marker,* No. 94–40002–01–SAC, 1994 WL 192018, at *8 (D.Kan. Apr. 15, 1994); *United States v. DePalma,* 461 F.Supp. 778, 797 (S.D.N.Y.1978). According to the leading treatise on criminal procedure:

> [A] motion to strike surplusage should be granted only if it is clear that the allegations are not relevant to the charge and are inflammatory and prejudicial. This is a rather exacting standard, and only rarely has surplusage been ordered stricken.

Wright, *supra,* § 127, at 426. Defendant therefore must overcome a most severe burden to move this court to order language from the indictment stricken.

■ Striking the entire Introduction section would be wholly inappropriate in this case. The Introduction section provides the background necessary for a jury to understand the full scope of defendant's activities, and to place defendant's conduct in the appropriate context. The indictment charges twenty-five separate counts that implicate a wide range of defendant's professional activities. In such cases, background information is undoubtedly helpful.

Background information is particularly useful in cases involving perjury, false statements, and obstruction of justice. As Judge Greene reasoned in *United States v. Poindexter,* "it would be difficult, if not impossible for the jury to understand defendant's allegedly false statements and obstruction without [such] background." *Poindexter,* 725 F.Supp. at 37; *see also United States v. Langella,* 776 F.2d 1078, 1081 (2d Cir.1985) (holding that "background paragraphs were relevant to the obstruction of justice count, and that refusal to strike them was therefore proper."). Judge Hogan expressed a similar sentiment in *United States v. Weinberger,* No. 92–235, 1992 WL 294877 (D.D.C. Sept. 29, 1992), noting that the OIC had a legitimate "need to place the defendant's actions in context and to establish the defendant's state of mind, intent and motives." *Id.* at *7. The Introduction section of the indictment is nothing more than a series of background and informational paragraphs intended to contextualize defendant's conduct. Although the introduction section sweeps more broadly than the background paragraphs at issue in *Poindexter, Langella,* and *Weinberger,* the vast array of offenses charged and the complexity of the facts in this case suggest that the inclusion of extended background paragraphs in the indictment would be neither prejudicial nor improper. The court therefore declines to strike the Introduction section from the indictment.

■ The court also shall deny defendant's request to strike all occurrences of the phrases "among other things," "a variety of," "and others," and "among the other." Defendant argues for a mechanical rule of exclusion that would bar the use of these phrases wherever they appear in the indictment. Defendant claims that "such words are considered prejudicial" and are "routinely struck." Def's Mot. to Strike, at 4 (citing *United States v. Poindexter,* 725 F.Supp. 13 (D.D.C.1989); *United States v. Whitehorn,* 710 F.Supp. 803 (D.D.C.1989); *United States v. Hubbard,* 474 F.Supp. 64 (D.D.C.1979)). However, unlike the defendants in *Poindexter, Whitehorn,* and *Hubbard,* defendant Watt does not claim that the occurrences of these phrases in this indictment are prejudicial to *him.* Rule 7(d) of the Federal Rules of Criminal Procedure permits the court to strike portions of an indictment to protect defendants from "immaterial or irrelevant allegations ... which may ... be prejudicial." Fed.R.Crim.P. 7(d) Advisory Commit-

tee's Note. In this case, defendant neither argued that the inclusion of such phrases is unduly prejudicial to his case nor claimed that such prejudice would somehow be ameliorated if these phrases were stricken from the indictment. Rather, defendant blankly asserts that courts in other cases have determined that such words, as they appeared in the indictments at issue in those cases, were prejudicial " 'regardless of their location in the indictment' " and that on this basis alone such phrases should be stricken from this indictment in every instance. Def.'s Mot. to Strike, at 4 (quoting *Hubbard,* 474 F.Supp. at 82). By contrast, the government argues that these phrases were employed in the process of setting forth relevant and material evidence illustrative of the means by which the defendant committed the offenses charged, and that no specific prejudice has resulted from their use. In the absence of such a showing of either prejudice or immateriality, defendant's motion must be rejected.

■ Defendant also fails to persuade this court to order all bracketed information within quotations of witness testimony stricken. Defendant argues that the indictment is not the place for "tidying up" testimony, and that the use of bracketed information within quotations to clarify the witness's testimony should be done only at trial. Defendant contends that "the questions *actually asked* and the answers *actually given* " are of critical importance, and as such, should not be tampered with in the indictment. Def.'s Mot. to Strike, at 5.

Again, defendant fails to make the required showing of prejudice or immateriality. At no point does defendant point to a particular instance where the use of a bracketed term is prejudicial. Moreover, defendant does not contest the materiality of the bracketed information. Rather, defendant contests the *characterization* of the testimony. Because defendant disagrees with the manner in which the grand jury presented witness testimony in the indictment, defendant requests that the grand jury to issue an indictment, however clumsy and confusing, that sets forth each and every question and answer *verbatim.*

■ Rule 7(c)(1) provides that "[t]he indictment ... shall be a plain, concise and definite written statement of the essential facts constituting the offense charged." Fed. R.Cr.P. 7(c)(1). However, Rule 7(c)(1) does not obligate the grand jury to use only *verbatim* quotations of witness testimony in setting forth the offenses charged. The accuracy of the grand jury's characterization of the facts, testimony, and events leading up to defendant's prosecution is a determination that should be left to the *petit* jury. The government as well as the defendant may offer evidence in support or in contravention of the grand jury's interpretation of witness testimony at trial. The characterization of the witness testimony in the indictment, in the absence of a showing by the defense of prejudice or immateriality, is an issue that should only be resolved by the finder of fact.

■ Finally, defendant argues that the headings listed in the Charges section of the indictment contain prejudicial surplusage. Defendant's claim, however, is without foundation. As the government correctly points out, only the "Obstruction" heading could arguably be construed as prejudicial. Yet, the word "obstruction" is a statutory term used to describe the sort of illegal activity that defendant is alleged to have committed. Courts have routinely denied challenges to the reasonable use of statutory terms in an indictment. *See, e.g., United States v. Vastola,* 670 F.Supp. 1244, 1255 (D.N.J.1987); *United States v. Ianniello,* 621 F.Supp. 1455, 1479 (S.D.N.Y.1985), *aff'd,* 808 F.2d 184 (2d Cir.1986); *United States v. Persico,* 621 F.Supp. 842, 860 (S.D.N.Y.1985). In this case, the term is used to designate a series of charges that fall under this category of proscribed activity. The use of this term in this fashion is reasonable. Accordingly, defendant's motion to strike the section headings in the indictment shall be denied.

Although the indictment in this case is undoubtedly voluminous, this Court cannot indulge defendant's request to strike large portions without a sufficient showing of prejudice or immateriality. Moreover, even if defendant were to make such a showing, the extensive redactions suggested by the defen-

dant would leave little more than a bare and incomprehensible listing of the charges against him. The need for a clear and concise indictment must be balanced against the compelling interest in presenting an organized indictment that lends structure to a complicated case involving numerous charges and thousands of pages of documents. Accordingly, defendant's motion to strike language from the indictment shall be denied.

### B. Defendant's Motion In Limine Regarding Federal Rule 404(b) Evidence

Defendant also moves this Court to prohibit the government from introducing evidence of three prior incidents involving the defendant that the government believes to be relevant to the charges contained in the indictment and admissible under Federal Rule of Evidence 404(b). Defendant argues that the government has neither complied with the notice requirements set forth in the Rule nor made the required showing of relevancy. Defendant further contends that, even if the evidence that the government seeks to introduce is relevant to the charges contained in the indictment, the evidence nevertheless should be excluded because its prejudicial impact outweighs its probative value.

#### 1. Notice

▆▆ Federal Rule of Evidence 404(b) requires the government to provide the defense with "reasonable notice" of the "general nature of any such evidence [that the government] intends to introduce at trial." Fed. R.Evid. 404(b). In this case, the government provided notice to defendant of its intention to introduce certain evidence at trial in a letter dated August 11, 1995. Defendant first challenges the sufficiency of this notice on the grounds that it was untimely. However, it is clear from the date of submission that defendant's notice was timely. This Court's Order of May 11, 1995 stated explicitly that notice of Rule 404(b) evidence should be provided to the opposing party forty-five days before commencement of trial unless such evidence is later discovered. See May 11, 1995 Order, at 5. The government's notice was sent more than four months before the trial is now scheduled to commence.[11]

▆▆ Defendant next challenges the government's notice on the ground that it lacks specificity. Defendant contends that Rule 404(b) requires that the government provide specific information, such as the "date, time [and] place for the alleged actions," "any person who potentially was involved," the "names, dates, persons involved and a particularized identification of the arrangement referenced," and a "delineat[ion] [of the] reasons" for which the evidence is offered. Def.'s Mot., at 3–4.

Defendant's argument for a more particularized notice is without foundation. The text of Rule 404(b) indicates that the government need only describe the "general nature" of the evidence it intends to introduce. Fed.R.Evid. 404(b). In fact, the Advisory Committee considered and rejected the "particularity" requirement suggested by the defendant when it amended Rule 404(b) to establish the pretrial notice requirement. As the Advisory Committee noted: "[N]o specific form of notice is required. . . . Instead, the Committee opted for a generalized notice provision which requires the prosecution to apprise the defendant of the general nature of the evidence of the extrinsic acts." Id.

Moreover, courts have routinely denied requests by defendants for greater particularity in 404(b) notice. See, e.g., United States v. Kern, 12 F.3d 122, 124 (8th Cir.1993) (holding that the government's statement that it "might use evidence from some local robberies" was sufficient to describe the general

---

11. Defendant points out that the first page of the government's correspondence is dated Friday, August 11, 1995 while the continuation page is dated Monday, August 14, 1995. Defendant contends that this chronological discrepancy directly impacts on whether the government's notice was timely. This argument is of no significance in light of Court's rescheduling of the trial from September 26, 1995 to January 8, 1996. The 404(b) notice deadline established in the May 11, 1995 Order shifts with the trial date. When the Court rescheduled the commencement of trial to January 8, 1996, the 404(b) notice deadline shifted to November 24, 1995. Thus, even if the government's notice was untimely in the first instance, the rescheduling of the trial date cured any timeliness defect.

nature of the acts under Rule 404(b)); *United States v. Schoeneman*, 893 F.Supp. 820 (N.D.Ill.1995) (holding that the government need not "turn over specific evidentiary detail" in 404(b) notice); *United States v. Rusin*, 889 F.Supp. 1035, 1036 (N.D.Ill.1995) (rejecting defendant's argument that Rule 404(b) notice requires the government to disclose "dates, places, and persons involved in the specific acts; documents that pertain to the acts, a statement of the issues to which the government believes such evidence may be relevant....").

In this case, the government provided the following notice:

> [T]he United States is providing notice that it reserves the right to present the following evidence pursuant to Rule 404(b) of the Federal Rules of Evidence:
>
> (1) That defendant Watt attempted to obtain favorable consideration for other non-HUD-related projects by approaching high-ranking Reagan–Administration officials in other departments.
>
> (2) That defendant Watt was actively involved in the negotiating of his consulting fees for non-HUD-related matters.
>
> (3) That defendant Watt attempted to subvert true competition for other HUD-related projects by, among other things, trying to persuade Mr. Roy Sampsel to sign forms indicating that he had suffered from discrimination so that Mr. Sampsel would qualify for minority set-asides that would inure to defendant Watt's benefit.

Letter of August 11, 1995 from the Office of Independent Counsel to William B. Reynolds. In light of both the Advisory Committee Notes and existing precedent construing the notice requirement of 404(b), it is clear that the government's notice sufficiently describes the "general nature" of the acts at issue. Accordingly, the court finds that the letter sent by the government satisfies the notice requirements of Rule 404(b).

### 2. Relevancy

"A court considering whether to admit bad acts testimony must undertake a two-part analysis. First, the court must inquire whether the testimony is relevant under the standards set forth in Federal Rule of Evidence 404(b). Secondly, if the court finds the testimony relevant, it must determine whether the prejudicial impact of the testimony substantially outweighs its probative value." *United States v. Moore*, 732 F.2d 983, 987 (D.C.Cir.1984) (footnote omitted); *United States v. Miller*, 895 F.2d 1431, 1435 (D.C.Cir.), *cert. denied*, 498 U.S. 825, 111 S.Ct. 79, 112 L.Ed.2d 52 (1990).

Evidence is deemed relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would without the evidence." Fed.R.Evid. 401. In the context of Rule 404(b), the government must demonstrate that the evidence is probative of a "material issue other than character." *Huddleston v. United States*, 485 U.S. 681, 686, 108 S.Ct. 1496, 1499, 99 L.Ed.2d 771 (1988). In this case, the government has demonstrated that the 404(b) evidence that it reserves the right to introduce at trial meets this threshold relevancy requirement.

In 404(b) evidence item (1), the government seeks to introduce evidence that defendant attempted to obtain favorable consideration for other non-HUD related projects by approaching high-ranking Reagan Administration officials in other departments. The government maintains that this evidence is relevant to the counts of the indictment which charge defendant with falsely representing and concealing evidence of the extent of his efforts to obtain favorable consideration for HUD-related projects by approaching high-ranking officials in the Reagan Administration. The government argues that its proposed evidence tracks precisely the same activities alleged in the indictment with respect to non-HUD related projects in other departments. The government hopes to shed light on defendant's motive for concealing the HUD related consulting activities by

demonstrating that defendant was endeavoring to profit substantially through this type of consulting on more than just HUD-related projects.

The government also contends that this proposed evidence is relevant to allegations contained in the indictment that defendant falsely testified about his attempts to influence decision makers who were political appointees. The government hopes to establish that defendant's intent in contacting HUD officials was not simply to have career employees process the paperwork involved, but to influence these political appointees by showing that the defendant also approached high-ranking officials and political appointees outside of HUD to obtain favorable consideration for non-HUD projects.

In the second item, the government seeks to introduce evidence that the defendant was actively involved in negotiating his consulting fees for non-HUD related matters. The government contends that this evidence is relevant to the allegations contained in the indictment that the defendant misrepresented and concealed evidence of how his compensation from the consulting transactions was determined. Defendant testified that he was offered a set fee, and that he had accepted the fee because he was not a good negotiator. The government intends to use this evidence to cast doubt on the veracity of these statements concerning his fee arrangement by demonstrating other instances in which defendant Watt also negotiated his fee for non-HUD related matters.

In the third and final item, the government seeks to introduce evidence that defendant attempted to subvert true competition for other HUD-related projects by, among other things, trying to persuade Mr. Roy Sampsel, a government contractor, to sign forms indicating that he had suffered from discrimination so that Mr. Sampsel would qualify for minority set-asides that would inure to the defendant's benefit. The government maintains that this proposed evidence is relevant to the counts charging defendant with falsely representing that his intent in lobbying was to ensure that his clients' projects would be permitted to "compete" with other projects for approval by local public housing authorities. By showing that on the occasions, such as those set forth in the notice for the proposed evidence, that the defendant also sought to subvert true competition, the government hopes to demonstrate that defendant's actual intent in the matters described in the indictment was to subvert competition on HUD-related projects. This fact, according to the government, tends to demonstrate that defendant's purpose in providing the allegedly false representations was to conceal the truth.

Each of these proffered incidents attempts to show some pattern of conduct that is consistent with or similar to the conduct alleged in the indictment. In such circumstances, the introduction of 404(b) evidence is routinely upheld. *See, e.g., United States v. DeLoach,* 654 F.2d 763 (D.C.Cir.1980) (allowing the introduction of 404(b) evidence to show the intentional filing of false statements), *cert. denied,* 450 U.S. 933, 101 S.Ct. 1395, 67 L.Ed.2d 366 (1981); *United States v. Childs,* 598 F.2d 169, 173–74 (D.C.Cir.1979) (allowing the introduction of 404(b) evidence to show specific intent to obstruct the carriage of mail). Furthermore, the government has demonstrated a "clear and logical connection between the alleged earlier offenses or misconduct and the case being tried." *United States v. Biswell,* 700 F.2d 1310, 1317–18 (10th Cir.1983). Accordingly, the court finds that the government met the relevancy requirement of Rule 404(b).

### 3. *Absence of Prejudicial Impact*

 The prejudicial impact of the proposed evidence does not substantially outweigh its probative value. This Circuit has held that the balancing of the probative value of the evidence against its prejudicial impact "should generally be struck in favor of admission when the evidence indicates a close relationship to the events charged." *United States v. Moore,* 732 F.2d at 989. In this case, defendant has not demonstrated that the introduction of the evidence would undu-

ly prejudice his case. The defendant posits that the government's proposed evidence would "tend to prejudice" the defendant's case because the evidence does not relate to defendant's activities at HUD. Defendant's argument, however, does nothing more than restate his relevancy objection. Defendant is in effect arguing that, because he believes government's proposed evidence to be irrelevant, the admission of the evidence would be unduly prejudicial. However, it is clear under the law of our Circuit, as this Court has already discussed, that the government has made a sufficient showing of relevance regarding its proposed evidence. Thus, the only argument defendant makes that actually addresses the prejudice issue is that the introduction of government's proposed evidence would result in confusion and a waste of time. However, defendant has not provided any additional argument or support for this claim. In the absence of some showing of prejudicial impact, this Court cannot exclude relevant evidence.

In sum, the government has provided reasonable notice to the defendant that it would reserve the right to present 404(b) evidence at trial. The government has also clearly established the relevance of this evidence and the absence of prejudice to the defendant. The defendant, by contrast, has failed to establish that the items of evidence identified in the government's notice are either wholly irrelevant under Rule 404(b) or unduly prejudicial under Rule 403. Accordingly, defendant's motion *in limine* to exclude this evidence shall be denied.

### III.

### CONCLUSION

A separate Order summarizing all of the above shall issue this date.

### *ORDER*

For the reasons set forth in the accompanying memorandum opinion, the Court hereby ORDERS the following:

*A. Motions Challenging the Indictment*

1. Defendant's Motion to Dismiss Counts 2, 4, 12, 14, 18, 23, and 24 in light the Supreme Court's ruling in *Hubbard v. United States* is GRANTED, and counts 2, 4, 12, 14, 18, 23, and 24 are hereby DISMISSED.

2. Defendant's Motion to Dismiss Counts 6, 8, 10, 16, 20, and 22 as improperly charged under 18 U.S.C. § 1503 is DENIED.

3. Defendant's Motion to Compel and Election Between Multiplicitous Counts is DENIED.

4. Defendant's Motion to Dismiss Counts 1 through 23, or in the Alternative, For an Election on the Ground that they are Duplicitous is DENIED.

5. Defendant's Motion to Dismiss Count 24 is DENIED as moot.

6. Defendant's Motion to Dismiss Count 25 is DENIED.

7. Defendant's Motion to Strike Surplusage from the Indictment is DENIED.

*B. Non–Dispositive Motions*

1. Defendant's Motion In Limine Regarding Federal Rule 404(b) Evidence is DENIED.

2. Defendant's August 16, 1995 Motion to Compel Production of Documents From OIC is DENIED as moot.

3. Defendant's August 17, 1995 Motion to Compel Production of Documents From OIC is DENIED as moot.

SO ORDERED.