**UNITED STATES of America, Appellee,**

v.

**Robert L. RUSSO, Appellant.**

**No. 96–3031.**

United States Court of Appeals,
District of Columbia Circuit.

Argued Oct. 21, 1996.

Decided Jan. 14, 1997.

Robert L. Tucker, Assistant Federal Public Defender, Washington, DC, argued the cause for appellant. With him on the briefs was A.J. Kramer, Federal Public Defender.

William D. Weinreb, Assistant U.S. Attorney, Washington, DC, argued the cause for appellee. With him on the brief were Eric H. Holder, Jr., U.S. Attorney, John R. Fisher, Roy W. McLeese, III, and Thomas J. Motley, Assistant U.S. Attorneys.

Before: WILLIAMS, HENDERSON, and RANDOLPH, Circuit Judges.

Opinion for the Court filed by Circuit Judge RANDOLPH.

RANDOLPH, Circuit Judge:

Illinois congressman Daniel D. Rostenkowski allegedly placed people on the congressional payroll who did no official work, or very little. In 1993, a grand jury investigating the congressman subpoenaed Robert L. Russo, a congressional employee who worked part-time for Rostenkowski from 1976 to 1987. During those 11 years Russo received federal wages totaling $90,000. Asked about the nature of his work, Russo—testifying under a grant of immunity—said he spent several hours cleaning the congressman's Chicago district office five days a week, every other week. Russo denied that anyone else cleaned the Chicago office in those years. Both statements, an indictment later charged, were false. A jury convicted Russo of perjury (18 U.S.C. § 1623(a)), and obstruction of justice (18 U.S.C. § 1503), and the district court sentenced him to ten months' imprisonment and a fine.

Of the three issues Russo raises in this appeal from his conviction, two relate to the district court's rulings excluding defense evidence. We will begin with them.

I

The evidence at trial directly contradicted Russo's grand jury testimony. The government called Rostenkowski's "regular" office cleaners to the stand. From them, the jury learned that Russo cleaned the Chicago district office—or "ward office," as it was known—only on alternate Tuesday evenings, or perhaps another evening or two, but not every day every other week. These workers knew Russo and he knew them. They worked together occasionally and they discussed matters relating to the cleaning of the ward office. The Chicago office manager was unsure how often Russo cleaned the congressman's office, but she knew that others made up the regular daily cleaning crew.

The government sought to establish that the $90,000 paid to Russo in the 11 years was more for the work of his wife Irene as the Rostenkowski housekeeper, than for Russo's work at the congressman's office. The prosecutor, in his opening statement, promised

that the jury would "hear evidence that Mrs. Russo was the cleaning person for the family." Some of the evidence consisted of the testimony of Rostenkowski's former son-in-law, who said he saw Irene cleaning the congressman's house on a regular basis from 1979 to 1988. The government also sought to counter Russo's explanation to the grand jury that his wife worked for free at the Rostenkowki home because she liked to help people. In his opening statement, the prosecutor referred to Irene's bronchial asthma condition, which caused her to quit her employment several years earlier, and questioned whether someone in that condition would have cleaned the congressman's house because "she enjoys doing it." The prosecutor then connected her alleged housekeeping to Russo's congressional salary, and asked the jury the "$90,000 question": "Why are you really getting the $90,000 here, Mr. Russo?" In his closing argument the prosecutor returned to the same theme:

> Another thing he said is that Irene Russo cleaned for free. Step back for a moment 10 to 15 years. Someone cleaning for free, does that comport with your common experiences, that someone would clean someone else's house for that long a period of time, never get any money, never getting paid? He said that's the way his wife was.

■ The first ruling to which Russo objects relates to Rita Kusek, Irene Russo's friend for 25 years. The defense called Kusek to testify about Irene's "penchant for cleaning over the years," and about her observations of Irene doing this without charge. When the district court barred the testimony on the ground that it was "totally irrelevant," defense counsel made a proffer. Kusek would describe Irene's spending several days helping put up the wallpaper in Kusek's house; and would say, based on her experience, that "Irene is sort of a cleaning freak. She kind of likes to do that." Defense counsel added that although Irene's propensity to clean may not initially have been relevant to Russo's indictment for perjury (he was charged only with lying about his *own* work), the matter became significant in light of the prosecutor's mocking Russo's grand jury testimony that his wife "liked to clean, she just likes it, she enjoys it, she likes helping peo-

ple." The court reiterated its decision that the testimony was irrelevant.

■ Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Federal Rule of Evidence 401. The Advisory Committee's Note to Rule 401 tells us that relevancy "exists only as a relation between an item of evidence and a matter properly provable in the case." The first step in determining relevancy, therefore, is "to identify the 'matter properly provable.'" *United States v. Foster*, 986 F.2d 541, 545 (D.C.Cir.1993). In performing this task, the judge must take account of the relationship of the evidence offered to the evidence already admitted. Some matters are properly provable only because the opposing party has made them such.

If, for instance, the prosecution had presented nothing about Irene Russo's serving for free as Rostenkowski's housekeeper, Kusek's testimony would have been of no consequence. But it became of consequence when the prosecution sought to bolster its case by offering the jury a reason why the congressman would have paid Russo more than he actually earned. The government's desired inference—that the $90,000 represented, in large measure, compensation for Irene's services—also impugned Russo's credibility in the grand jury. There he had testified, as the trial jury knew, that his wife helped Mrs. Rostenkowski clean, and that she did so without compensation because she is "a very helpful individual" who "just likes to help people."

It was therefore proper for Russo to put on evidence contrary to the government's suggested inference. As in *Foster*, 986 F.2d at 545, the Kusek evidence fell within Wigmore's principle of "explanation": "every evidentiary fact or class of facts may call for two processes and raise two sets of questions: (1) the admissibility of the original fact from the proponent, and (2) the admissibility of explanatory facts from the opponent." 1A JOHN H. WIGMORE, EVIDENCE § 36, at 1004 (Tillers rev.1983). In the words of Rule 401,

the "fact that [became] of consequence to the determination of the action" was Irene's expectation of compensation for cleaning the Rostenkowski home. The prosecutor tried to convince the jury that Irene would not have worked for nothing. Rita Kusek would have given evidence that Irene sometimes did just that. In the words of Rule 401, Kusek's testimony would have made it "more probable" than without evidence that Irene cleaned for free. And if the jury found that she worked all those years without expecting compensation, this would have tended to undercut the government's theory about why the congressman paid Russo so much.

Trial judges, of course, are not expected to provide detailed explanations for each of their evidentiary rulings. The judge must decide, often in a flash, if the answer to a question, or a document, or some other kind of exhibit, would make something in the case more probable or less probable than it would otherwise be. Precedent, logic, experience and just plain "feel" may play a role in the decision. This is not to suggest that there are degrees of relevancy. An item sought to be introduced may have little probative value or it may have a great deal. But as Rule 401 defines it, the item is either relevant or it is not; there is no in-between. *Foster*, 986 F.2d at 545. Nonetheless, Federal Rule of Evidence 103(a) instructs us that "[e]rror may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected . . . .", and Federal Rule of Criminal Procedure 52(a) provides that "[a]ny error, defect, irregularity or variance which does not affect substantial rights shall be disregarded." *See also* 28 U.S.C. § 2111.

Here the district court stated one ground, and one ground only, for refusing to admit Kusek's testimony—it was irrelevant. Rather than trying to defend the court's ruling on that basis, the government invokes another ground for exclusion. The argument is that admitting Kusek's testimony would have violated Federal Rule of Evidence 404(a). With exceptions not pertinent here, "[e]vidence of a person's character is not admissible for the purpose of proving action in conformity therewith on a particular occasion . . . ." FED

R. EVID. 404(a). This opens up another set of questions. Rather than offer answers, we shall give Russo the benefit of all legal doubts. We will, in other words, assume that the testimony about Irene's penchant for cleaning was offered for "a consequential, material proposition, rather than to prove an act," and therefore did not come "within the prohibition of [Rule 404(a)]." JACK B. WEINSTEIN & MARGARET A. BERGER, WEINSTEIN'S EVIDENCE § 404[01], at 404–18 (1996). We will also assume that what Kusek would say about Irene's helping her with wallpaper had something to do with cleaning, and that despite Federal Rule of Evidence 405, which deals with the permissible methods of proving character, all of Kusek's testimony should have been admitted. Even in the face of these assumptions, we could not set aside Russo's conviction.

Although it looms large in this appeal, Irene's cleaning of the congressman's home was scarcely central at trial. What mattered was the sufficiency of the government's proof that Russo intentionally lied to the grand jury, next to which the Kusek testimony was comparatively trivial. The government's evidence of Russo's lying was strong indeed. Several witnesses testified that Russo knew they were the ones who regularly cleaned the ward office, and that Russo worked far less than he claimed. Whatever Rostenkowski's motivation for paying Russo as much as he did, the evidence of Russo's lying remained. Furthermore, Kusek's evidence added little to what the jury eventually had before it on this side issue. Other testimony indicating Irene's cleaning proclivity found its way into the case. Rostenkowski's daughter testified on direct examination that Irene was never the housekeeper for her family, and that Irene and Mrs. Rostenkowski would reciprocate helping each other out with cleaning and redecorating. The congressman's daughter further explained that the same was true at the family's summer home in Wisconsin, where "mom and Irene would get together on redecorating or even planting something in the yard and they would help each other out." Another defense witness told the jury that the Russos and the Rostenkowskis were neighbors both in Chicago and Wisconsin. After Russo's daughter and son-in-law pur-

chased a summer home in Wisconsin, Russo and his wife would spend weekends there. Before then, Russo and his wife rented a cottage next door to the congressman's Wisconsin property. The jury thus heard that the Russo and Rostenkowski families were friendly, that Irene and the congressman's wife were good friends, and that Irene voluntarily helped out with cleaning and redecorating. Kusek would not have added much to this evidence, and we cannot believe her testimony would have changed the outcome of the trial. We conclude therefore that refusing to allow Kusek to testify about Irene was a harmless error, if it was an error at all, because the verdict against Russo was "not substantially swayed" by keeping her testimony out. *Kotteakos v. United States,* 328 U.S. 750, 765, 66 S.Ct. 1239, 1248, 90 L.Ed. 1557 (1946).

■ Russo's other evidentiary challenge relates to FBI Agent Richard Eggleston, who interviewed Russo five weeks before his grand jury testimony. Russo told Eggleston he had worked at both Rostenkowski's Damen Avenue ward office and the congressman's home office on Noble Street. As part of its case, the defense wanted to call Eggleston to testify about this part of the interview, in order to show that Russo reasonably could have thought he was being asked about both offices when he was questioned in the grand jury. The district court excluded the evidence, on the grounds that it was hearsay and irrelevant.

There is no doubt that the nature of Russo's work for Rostenkowski was a fact of consequence in the trial. But the defense did not offer the FBI agent's interview for the truth of Russo's statement that he worked at the congressman's home on Noble Street. As the defense seemed to agree, the agent's testimony, if introduced for this purpose, would have been hearsay and thus inadmissible. Like the district court, we thus fail to see the relevance of this evidence. One cannot say that because Russo worked at two offices, the agent's testimony would have made it more probable that Russo misunderstood questions in the grand jury regarding his work at "the office." Entailed in that statement is an assumption that Russo

did in fact work at the congressman's home, yet the interview could not be admitted to show this. If other evidence, properly admitted, indicated that Russo cleaned the congressman's home office, that might enable defense counsel to argue in closing that Russo was confused in the grand jury. But it would not make Eggleston's testimony relevant and admissible.

## II

■ Russo challenges his conviction on Count Two, which charged him with obstruction of justice, in violation of 18 U.S.C. § 1503, by "falsely and evasively testifying to the grand jury concerning (1) the nature and extent of any work he did for the Rostenkowski congressional office; and (2) the cleaning services performed by others at 2148–2150 North Damen Avenue." For our purposes, the pertinent portion of § 1503 is as follows:

(a) Whoever corruptly, or by threats of force, or by any threatening letter or communication, endeavors to influence, intimidate, or impede any grand or petit juror, or … influences, obstructs, or impedes, or endeavors to influence, obstruct, or impede, the due administration of justice, shall be punished as provided in subsection (b).

Relying on *United States v. Poindexter,* 951 F.2d 369 (D.C.Cir.1991), Russo argues that § 1503 "is not violated by the mere giving of false testimony to a grand jury." This is true, but beside the point. In a § 1503 prosecution, the government must prove—as it did in this case—not just that the defendant lied to a grand jury, but that he did so with the intent "to impede the due administration of justice." *United States v. Bridges,* 717 F.2d 1444, 1449 & n. 30 (D.C.Cir.1983). Because the elements of perjury and obstruction of justice are not the same, *Bridges* held that a defendant who allegedly made a false statement to a grand jury could be prosecuted for both offenses.

Russo's actual point thus must be that, under § 1503, his lying to a grand jury with the intent to obstruct its investigation did not amount to a "corrupt" obstruction of the due administration of justice. On the face of it,

this is a surprising proposition. It supposes that "corrupt" has nothing to do with honesty, that a witness whose aim is to impede a grand jury investigation by distorting the truth is not acting "corruptly." It also entails some odd consequences. For instance, how can it be that concealing or destroying documents requested by a grand jury subpoena duces tecum may violate § 1503, while lying under oath about the location of the documents cannot? *United States v. Lench,* 806 F.2d 1443, 1445 (9th Cir.1986); *United States v. McKnight,* 799 F.2d 443, 447 (8th Cir.1986). Russo's related claim is that he had no notice that perjury could trigger a § 1503 violation. Yet when he was immunized, the district court warned him that if he lied to the grand jury he could be prosecuted for obstruction of justice.

At any rate, Russo's attempt to analogize his case to *Poindexter* fails for many of the reasons given by Judge Lamberth in *United States v. Watt,* 911 F.Supp. 538, 545–47 (D.D.C.1995). In *Poindexter* we had an as-applied challenge to 18 U.S.C. § 1505, which forbids "corruptly" obstructing or impeding "the due and proper administration of the law" in any agency or congressional proceeding. We held that "corruptly," as used in § 1505, "is too vague to provide constitutionally adequate notice that it prohibits lying to Congress." 951 F.2d at 379. While the portion of § 1503 at issue here, and the portion of § 1505 at issue in *Poindexter,* are very nearly identical, the settings in which the provisions apply are vastly different. One can imagine any number of non-corrupt ways in which an individual can intend to impede the work of an agency or congressional committee. We gave the example in *United States v. North,* 910 F.2d 843, 882, *withdrawn and superseded in part on reh'g,* 920 F.2d 940 (D.C.Cir.1990), of an executive branch official calling the chairman of a congressional committee and stating, "We both know this investigation is really designed to embarrass the President (or a Senator), not to investigate wrongdoing. Why don't you call it off?" The problem for the *Poindexter* court, then, was to discern some special meaning in the word "corruptly," some meaning "sufficiently definite, as applied to the conduct at issue on this appeal, *viz.* lying

to Congress, to be the basis of a criminal conviction." 951 F.2d at 378. Otherwise "the statute would criminalize all attempts to 'influence' congressional inquiries—an absurd result that the Congress could not have intended in enacting the statute." *Id.* at 377–78. We have no such problem in this case.

Anyone who intentionally lies to a grand jury is on notice that he may be corruptly obstructing the grand jury's investigation. *See Kolender v. Lawson,* 461 U.S. 352, 357, 103 S.Ct. 1855, 1858, 75 L.Ed.2d 903 (1983). Whatever the outer limits of "corruptly" in § 1503, Russo's acts of perjury were near its center. *See Posters 'N' Things, Ltd. v. United States,* 511 U.S. 513, 525, 114 S.Ct. 1747, 1754, 128 L.Ed.2d 539 (1994). Numerous cases have, therefore, sustained § 1503 convictions of defendants who lied to grand juries. *See United States v. Cohn,* 452 F.2d 881, 882, 883–84 (2d Cir.1971); *United States v. Griffin,* 589 F.2d 200, 201, 202–07 (5th Cir.1979); *United States v. Perkins,* 748 F.2d 1519, 1527–28 (11th Cir.1984); *United States v. Walasek,* 527 F.2d 676, 679 (3d Cir.1975). As we said in *North,* "very few non-corrupt ways to or reasons for intentionally obstructing a judicial proceeding leap to mind." 910 F.2d at 882. This is why, in Judge Lamberth's words, the *"Poindexter* court [ ] drew a sharp distinction between § 1505 and § 1503, and repeatedly warned that the provisions were too 'materially different' for the construction of one to guide the other." 911 F.Supp. at 546. *Poindexter,* in other words, determined that the analogy Russo tries to draw between § 1503 and § 1505 is not a valid one despite the wording of the provisions.

Russo cites four cases from other circuits, but these do not affect our judgment. *United States v. Essex,* 407 F.2d 214 (6th Cir. 1969), stands for the proposition that § 1503 does not "make the rendering of false testimony alone an obstruction of justice," a proposition *Bridges* endorses and one not inconsistent with the verdict against Russo. *United States v. Grubb,* 11 F.3d 426, 437 (4th Cir.1993), and *United States v. Wood,* 958 F.2d 963, 973–75 (10th Cir.1992), which Russo also cites, are to the same effect. *United States v. Aguilar,* 21 F.3d 1475 (9th Cir.),

aff'd in part, rev'd, in part on other grounds, —— U.S. ——, 115 S.Ct. 571, 130 L.Ed.2d 488 (1994), decided nothing of importance to this case. In a footnote the court said that although *Poindexter* was "helpful," it was "unnecessary" for the court to conduct the same sort of vagueness inquiry with respect to § 1503. 21 F.3d at 1486 n. 8.

*Affirmed.*