Notice: This opinion is subject to formal revision before publication in the Federal Reporter or U.S.App.D.C. Reports. Users are requested to notify the Clerk of any formal errors in order that corrections may be made before the bound volumes go to press.

# United States Court of Appeals

FOR THE DISTRICT OF COLUMBIA CIRCUIT

---

Argued October 7, 2004          Decided November 12, 2004

No. 03-3095

UNITED STATES OF AMERICA,
APPELLEE

v.

SHAWN VADELL EDWARDS,
APPELLANT

---

Appeal from the United States District Court
for the District of Columbia
(No. 03cr00054-01)

---

*Sandra G. Roland*, Assistant Federal Public Defender, argued the cause for appellant. With her on the brief was *A. J. Kramer*, Federal Public Defender. *Neil H. Jaffee*, Assistant Federal Public Defender, entered an appearance.

*Mary B. McCord*, Assistant U.S. Attorney, argued the cause for appellee. With her on the brief were *Roscoe C. Howard, Jr.*, U.S. Attorney at the time the brief was filed,

---

Bills of costs must be filed within 14 days after entry of judgment. The court looks with disfavor upon motions to file bills of costs out of time.

*Kenneth L. Wainstein*, U.S. Attorney, *John R. Fisher*, *Elizabeth Trosman*, and *Stephen J. Gripkey*, Assistant U.S. Attorneys.

Before: Rogers, Tatel, and Garland, *Circuit Judges.*

Garland, *Circuit Judge*: A jury found defendant Shawn Edwards guilty of unlawful possession of a firearm by a convicted felon. At the trial, police officer Brian Glover testified on direct examination that he apprehended Edwards after a chase that ended when the officer knocked a gun from Edwards' hand. Glover also testified on redirect examination that he chased Edwards because Edwards ran from him, and people who had run from him in the past had been carrying guns or drugs. On appeal, Edwards contends that the latter testimony was inadmissible because it was not relevant to whether *he* possessed a gun on the night in question. Although the government agrees that such testimony would not have been admissible if offered during direct examination, it argues that Edwards' counsel rendered the testimony relevant by a cross-examination that impugned the officer's motive for chasing the defendant. We agree and affirm the judgment of the district court.

I

On February 6, 2003, a grand jury indicted Edwards on a single charge of possession of a firearm and ammunition by a convicted felon, in violation of 18 U.S.C. § 922(g)(1). The principal witnesses at Edwards' trial were police officers Brian Glover and Christopher Dove. On December 6, 2002, the two drove a marked police car on routine patrol in northwest Washington, D.C. Glover testified that, while driving east on the 100 block of Q Street, he and Dove observed a group of men, including Edwards, loitering in front of a residence. Because residents of the neighborhood had complained to the police about people standing in front of their homes, Glover said he called out to the group: "Gentlemen, y'all need to move on." 5/8/03 Tr. at 68. The men started to walk away; Edwards walked in one direction and his compan-

ions walked in another. Edwards, who had his hand in his jacket, then yelled at the officers: "What the f*** you looking at?" *Id.* at 69.

Glover testified that, because the officers were on a one-way street with traffic behind them, they drove around the block. As the officers drove down First Street, they again encountered Edwards, who "was looking over his shoulder" at them. *Id.* at 72. According to Dove, Edwards then "[ran] his mouth again." *Id.* at 137. Glover and Dove moved on, circling the block once more. This time they encountered Edwards on Bates Street.

Officer Glover testified that, upon this third encounter, Officer Dove "yelled over to [Edwards], and stated, what the F is your problem?" *Id.* at 73. Edwards replied with: "[W]hat the F are you looking at?" *Id.* As Glover began to get out of the police car, Edwards took off running through an alley, holding his left jacket pocket. Glover gave chase on foot, and Dove drove around to the other end of the alley. When Edwards emerged from the alley, running in front of the police car, Dove got out and joined the chase. Both officers testified that, as Dove neared Edwards, the latter reached into his jacket, pulled his hand out, and turned towards Dove with a semi-automatic pistol. Dove then tackled Edwards, knocking the pistol — later found to be fully loaded — into the snow. After a brief struggle, the officers subdued Edwards with pepper spray and arrested him.

In the course of cross-examining Officer Glover, defense counsel repeatedly suggested that, after first encountering Edwards, the officers pursued him because he had yelled a profanity at them. This line of questioning reached its crescendo when counsel suggested that the officers had decided to harass Edwards:

> Q. . . . [Y]ou decided on that third sighting to stop your car there on Bates Street and confront him; is that right?
>
> A. Yes, sir.
>
> . . . .

> Q. You and Officer Dove had talked about jacking up this guy who was vulgar and profane with you; isn't that right?
>
> A. No, sir.
>
> Q. You had talked about, I think maybe we should confront this young man about his profanity; isn't that right?
>
> A. About the profanity, sir, yes.
>
> Q. So you and Dove had talked about this is what we should do.
>
> A. No. If we see him, find out what's his problem, yes, sir.

*Id.* at 103-04.

After defense counsel finished cross-examining Officer Glover, the prosecutor alerted the court, in limine, that on redirect examination he planned to ask Glover certain questions for rehabilitative purposes:

> [Defense counsel], through his questioning, from my perspective elicited testimony that suggests that the officer was somehow doing something wrong when he chased someone who immediately fled as he got out of his car. I intend to ask him questions about other experiences he's had where people have fled, whether he has found drugs and guns on those individuals . . . . I think that's appropriate, given the connotations that [counsel] has raised with his questions . . . .

*Id.* at 120-21. When the court asked defense counsel whether he had any objection to this line of questioning, counsel responded: "I'll think about it." *Id.* at 121. The prosecutor's questioning of Glover then proceeded as follows:

> Q. Defense counsel also focused on your pursuit of the defendant when he began running.
>
> A. Yes, sir.
>
> Q. Have you pursued other individuals who have run when they've seen you?
>
> A. Yes.

[DEFENSE COUNSEL]: I'm going to object on this point on relevance, what he's done in other cases.

[PROSECUTOR]: And it's based on what we raised before.

THE COURT: I understand that, and I am going to overrule the objection.

*Id.* at 126-27. Following the court's ruling, the prosecutor resumed his questioning:

Q. And why do you — on those other occasions when you've pursued individuals, have you recovered weapons and drugs?

A. Yes.

Q. Is that true in every case that you followed someone?

A. On a foot pursuit, yes.

Q. Okay. And when he ran, did you have any suspicion?

A. The way that he was holding his left side of his body, like if he's holding something from falling out of his jacket or pocket area, the left side.

Q. What did you suspect? Did you have any suspicion about what it might be?

A. On foot chases like that, from my prior knowledge, could be —

[DEFENSE COUNSEL]: I'm going to object. This is clearly irrelevant. This is clearly improper.

*Id.* at 127.

At the ensuing bench conference, Edwards' counsel charged that "the government is now being allowed to create the impression that because this officer has had successful foot chases in the past[,] . . . this must have been a successful foot chase." *Id.* at 128. The prosecutor denied the charge, arguing that defense counsel "has attacked, in essence, the credibility and the aura of the encounter between Officer Glover and the defendant, and he attacked the basis for the officer getting out of his car." *Id.* The prosecutor continued: "He's attacking [the officers'] motives for pursuing the defen-

dant, and I am ... attempting to establish through factual questions the basis for their having suspicion." *Id.* at 128-29. The court agreed with the prosecutor, stating that "it seems to me [Glover's] motive in this case can be that he decides to chase based on his experiences in other cases." *Id.* at 129. Although the court overruled the objection, it offered to give a limiting instruction to the jury and invited counsel to submit one. No limiting instruction was submitted.

After the bench conference, the prosecutor concluded his questioning as follows:

> Q. Why were you chasing this man?
> A. Because he ran off from when I tried to make contact with him, and he was holding his left side inside of his jacket. It was my suspicion that he might have been carrying narcotics. They usually run and they throw drugs or possibly a weapon.
> Q. But you don't know — he could have been carrying nothing; isn't that correct?
> A. Yes, sir.

*Id.* at 131.

Edwards did not testify, and the defense called no witnesses on his behalf. The parties stipulated that Edwards had a prior felony conviction and that the pistol had been transported in interstate commerce. On May 12, 2003, the jury found Edwards guilty as charged.

## II

On appeal, Edwards presents a single issue for review: whether Officer Glover's testimony — that he chased Edwards because in every case in which an individual had run from him in the past, the individual had been carrying guns or drugs — was relevant. Appellant's Br. at 1 (Statement of Issues Presented for Review). Under Federal Rule of Evidence 402, evidence is admissible only if it is relevant. FED. R. EVID. 402. Evidence is relevant, in turn, if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." FED. R.

EVID. 401. We review a trial court's evidentiary rulings, including its admission of testimony over a relevance objection, for abuse of discretion. *See, e.g.*, *United States v. Smith*, 232 F.3d 236, 241 (D.C. Cir. 2000).

Edwards contends that the only facts "of consequence to the determination" of his case were whether he knowingly possessed a firearm, whether he had previously been convicted of a felony, and whether the firearm had been transported in interstate commerce. He further contends that Glover's redirect testimony had no "tendency to make the existence of" any of those facts "more probable or less probable." The government agrees with Edwards that the testimony would not have been admissible on direct examination to prove that the defendant knowingly possessed a gun. Oral Arg. Tape at 17:15-17:50.

Nonetheless, the government contends that Glover's testimony was relevant to whether Glover was biased against Edwards and thus not a credible witness. That fact was of "consequence to the determination of the action," the government maintains, because the cross-examination had made it so. The government argues that defense counsel's cross-examination created the inference that Edwards' use of profanity had so incensed the officers that they decided to harass him — to "jack[ ] up this guy who was vulgar and profane," 5/8/03 Tr. at 103 — and that the officers' bias was the motive both for their pursuit of Edwards and for their subsequent testimony that the gun in question fell from his hand. It was to rebut this inference, the government explains, that it offered Glover's redirect testimony. The purpose of the testimony was to show that the chase was motivated not by Glover's desire to harass the defendant, but rather by his experience with people who had fled from him in the past.[1]

The government's argument is persuasive. As we have noted before, "[s]ome matters are properly provable only

---

[1] Of course, the redirect testimony also had a "tendency to make" an ultimate fact — Edwards' possession of the pistol — "more probable." FED. R. EVID. 401. It had this tendency because, by rehabilitating Glover after the attack on his credibility, it made it

because the opposing party has made them such." *United States v. Russo*, 104 F.3d 431, 433 (D.C. Cir. 1997).[2] Indeed, Edwards agrees that Glover's previous experience with fleeing defendants would have been relevant had his counsel actually questioned Glover's reasons for chasing Edwards after he began running. Oral Arg. Tape at 22:20-22:55; *see* Reply Br. at 3. But Edwards insists that the cross-examination did not imply that Glover had an improper motive for chasing him after he fled. Rather, he maintains, the cross-examination merely suggested that the officer had an improper motive for repeatedly circling the block after their first encounter.

We do not believe that the cross-examination can be parsed so finely. It is true that certain portions focused on the officers' motives for circling the block.[3] But other portions made no distinction between the decision to circle the block and the decision to chase Glover after he fled.[4] In particular,

_____

more likely that his testimony that Edwards had a gun was true. *See generally* FED. R. EVID. 401 advisory committee's note ("The fact to be proved may be ultimate, intermediate, or evidentiary; it matters not, so long as it is of consequence in the determination of the action.").

[2] *Cf. United States v. Sumlin*, 271 F.3d 274, 282 (D.C. Cir. 2001) (suggesting that evidence that an informant previously testified truthfully may be admissible to rebut a claim of bias arising out of his plea agreement); *Russo*, 104 F.3d at 433-34 (holding that the defendant's testimony that his wife cleaned other people's houses for free was admissible to rebut the prosecutor's attack on the credibility of the defendant's claim that his wife cleaned his employer's house for free).

[3] *See, e.g.*, 5/8/03 Tr. at 98-99 ("Q. How did you feel when he made that statement to you, 'What the f*** are you looking at?' A. Well, I didn't think nothing of it . . . . Q. So then it was Officer Dove who wanted to go around the block to confront him again about that; is that right?").

[4] *See, e.g.*, *id.* at 99 ("Q. . . . [I]f you wanted to know why he had made that remark to you, then you were trying to confront the defendant, were you not?").

a jury could readily have viewed defense counsel's suggestion that "[y]ou and Officer Dove had talked about jacking up this guy who was vulgar and profane with you," 5/8/03 Tr. at 103, as a wholesale attack on the officers' motives throughout the course of events that led to Edwards' arrest. And as we held in *United States v. Bailey*, 319 F.3d 514 (D.C. Cir. 2003), when evidence gives rise to a "plausible" jury inference — even if a mistaken one — "evidence to rebut that inference is relevant." *Id.* at 518.

Nor did defense counsel's statements during the bench conferences suggest that he perceived the sharp distinction that Edwards now asserts on appeal. Indeed, when the court concluded that "it seems to me [Glover's] motive in this case can be that he decided *to chase* based on his experience in other cases," 5/8/03 Tr. at 129 (emphasis added), defense counsel's response was to attack the form of the prosecutor's question, rather than the court's failure to distinguish between stages of the encounter:

> That really wasn't the question that he asked. Why did you chase this defendant? Because he fled, and in my experience, people who flee may have something to hide. *If that had been the question, then I probably would not have objected. . . .* In other words, the question wasn't nearly as focused as I've just stated.

*Id.* at 129 (emphasis added).[5]

Finally, any doubt as to what inference the defense was actually trying to suggest to the jury was dispelled by the defendant's closing argument. There, defense counsel made clear he was charging that the officers' anger over the defendant's language and attitude colored every stage of that evening's events:

> It doesn't take any kind of fancy legal argument to figure out what was going on on the night of December 6 at the

---

[5] As noted above, when the prosecutor resumed his redirect examination after the bench conference, he rephrased his question in the form suggested by defense counsel. *See* 5/8/03 Tr. at 131 ("Q. Why were you chasing this man?").

unit block of Q Street. Mr. Edwards dissed the police. And within 10 minutes or less, 10 minutes or less, he was chased, he was maced, and he was busted. He made a profane remark to the police, and within 10 minutes, he was chased, maced, and busted. And looking back on it, . . . isn't it completely obvious that . . . after he made that remark and after the police started going around the block, . . . something bad was going to happen to Mr. Edwards?

5/9/03 Tr. at 14. In short, because counsel claimed that it was Edwards' profane remark that motivated each subsequent encounter — i.e., his being "chased, maced, and busted" — the district court properly admitted the officer's testimony that the pursuit was instead motivated by other considerations.

## III

As noted above, the only issue Edwards raises in his Statement of Issues Presented for Review is the relevance of Glover's redirect testimony. Appellant's Br. at 1. Similarly, the argument headings of Edwards' briefs contend only that the testimony should have been excluded because it was not relevant. *Id.* at 9-10; Reply Br. at 2. Edwards has not expressly argued — either on appeal or at trial — that, even if relevant, the redirect testimony should have been excluded as substantially more prejudicial than probative under Federal Rule of Evidence 403.[6] Nonetheless, Edwards' brief does declare that Glover's testimony was prejudicial, arguing that there was a risk that the jury would take the officer's testimony about other fleeing defendants as proof that Edwards fled because he, too, possessed weapons or drugs. Appellant's Br. at 13. The government's brief appears to

---

[6] Rule 403 provides: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." FED. R. EVID. 403.

treat this as an argument under Rule 403. *See* Appellee's Br. at 17-20.

At oral argument, Edwards' counsel clarified the defendant's position. Although Edwards was not mounting a Rule 403 argument, counsel said, Edwards was contending that *any* potential prejudice required exclusion of Glover's redirect testimony because the testimony was not relevant at all. This argument misapprehends the structure of the Federal Rules. If the testimony had been wholly irrelevant, it would have been inadmissible regardless of whether it was prejudicial. *See* FED. R. EVID. 402 ("Evidence which is not relevant is not admissible."). But because we have concluded that the testimony was relevant, it was admissible unless another rule provided otherwise. *See id.* ("All relevant evidence is admissible, except as otherwise provided by . . . these rules . . . ."). The rule that directly responds to Edwards' charge of prejudice is Rule 403. And that rule permits the exclusion of relevant evidence only "if its probative value is *substantially* outweighed by the danger of unfair prejudice." FED. R. EVID. 403 (emphasis added).

The defendant's disinclination to make a Rule 403 argument in this case is well justified. First, the prosecutor introduced the redirect examination with a reference that emphasized it was a response to the cross-examination,[7] and he concluded it with a question making clear that, although Glover's prior experience explained why the officer chased Edwards, it did not establish that Edwards himself had a gun.[8] Moreover, once the redirect was completed, the prosecutor never referred to it again, either in questioning other

---

[7] *See* 5/8/03 Tr. at 126 ("Q. Defense counsel also focused on your pursuit of the defendant when he began running.").

[8] *See* 5/8/03 Tr. at 131 ("Q. Why were you chasing this man? A. Because he ran off from when I tried to make contact with him, and he was holding his left side inside of his jacket. It was my suspicion that he might have been carrying narcotics. They usually run and they throw drugs or possibly a weapon. *Q. But you don't know — he could have been carrying nothing; isn't that correct? A. Yes, sir.*" (emphasis added)).

witnesses or in closing argument. Finally, while the risk that the jury would misuse the testimony could have been further reduced by a limiting instruction, Edwards cannot object to the court's failure to give such an instruction: although the court expressly invited defense counsel to submit an instruction, he never did so. *See United States v. Rogers*, 918 F.2d 207, 212 (D.C. Cir. 1990) (holding that a defendant may not appeal a district court's failure to issue a limiting instruction when the defendant did not request one); *see also* FED. R. EVID. 105 (providing that an appropriate limiting instruction shall be given "upon request").[9] Accordingly, we conclude that the probative value of Glover's redirect testimony in countering the inference of bias was not "substantially outweighed by the danger of unfair prejudice," FED. R. EVID. 403.

## IV

For the foregoing reasons, we hold that the district court did not err in admitting the challenged testimony. The judgment of the district court is therefore

*Affirmed.*

-------

[9] The government urges that, because Edwards failed to request a limiting instruction, he waived any claim that Officer Glover's testimony unfairly prejudiced him. *See* Appellee's Br. at 17-18. In *United States v. Rogers*, however, this court held to the contrary: "A lawyer can choose not to ask for a limiting instruction, and if he does choose not to ask for an instruction, he cannot appeal the district judge's failure to issue one. In exercising that strategic prerogative, however, a lawyer does not thereby waive his objection to the admission of evidence in the first instance." 918 F.2d at 212 (citations omitted).